RICHARD J. BRITTAIN, PLAINTIFF-APPELLANT, v. ATLANTIC REFINING COMPANY, A CORPORATION, DEFENDANT-RESPONDENT.

Argued February 6, 1941—Decided May 1, 1941.

For the plaintiff-appellant, *McDermott, Enright & Carpenter* (*Patrick A. Dwyer,* of counsel).

For the defendant-respondent, *McCarter, English & Egner.*

The opinion of the court was delivered by

WELLS, J. This is an appeal from the judgment entered upon the granting of a nonsuit by the trial court sitting in the Supreme Court with a jury at the Essex Circuit.

The defendant company, as the owner of certain premises at Glenwood avenue and Lackawanna Plaza, Bloomfield, leased such premises on September 1st, 1937, to one Earl I. Ramer. This property had been constructed for use as an automobile service station, and the land, building and equipment were rented to Ramer for such use.

Under the terms of the lease the tenant, Ramer, agreed to repair or replace all of the equipment or apparatus which might be lost, stolen, damaged or destroyed during the term of the lease, except in case of fire or other unavoidable casualty. In addition, the tenant assumed responsibility for "full and exclusive control of premises and equipment thereon" and agreed to indemnify the landlord, Atlantic Refining Company, from any claims arising through operation of the premises. By an ancillary agreement between the parties the tenant agreed to act as a dealer for the landlord company, and agreed to purchase stipulated amounts of gasoline and lubricants to be provided by the company.

In one of the rooms of the building erected on the premises there was installed a semi-hydraulic type lift, such as is used for hoisting automobiles for the purpose of lubrication. This lift was part of the equipment of the service station at the time of the renting and consisted of a large piston which supported two tracks of fifteen feet in length on which an automobile could rest while being raised and lowered. At each end of each track there were automatic chocks which, through the operation of roller arms, raised up when the tracks were off the floor and leveled off again when the tracks were lowered. There were also provided two moveable chocks which could be placed against the wheels of an automobile as a further means of keeping it from moving while on the tracks.

On December 29th, 1937, the plaintiff, Brittain, brought his automobile to this service station in order to have it greased and the oil changed. He drove his car on the tracks of the lift as far as it would go and left the brake off so the car could be moved on the tracks during the course of the work. He then remained in the room while the car was being serviced, and was standing at the back wall and about three feet from the front of the car when the lift was being lowered. When the car was about eight inches from the floor it rolled forward off the tracks and pinned the plaintiff against the wall, causing the injuries for which damages are being sought in this action.

At the trial in the court below the above facts were proven

as part of the plaintiff's case, and in addition it was shown that at the time of the accident' and for several years prior thereto, covering a period which included the beginning of the tenancy, automobiles had tended to roll forward while on the lift. Expert testimony was introduced to the effect that the tracks had an appreciable pitch downward toward the back of the lubricating room which was accentuated when the lift was loaded and raised. It was also shown that the piston, when fully raised, was one-eighth of an inch out of plumb, causing vibration when the lift was raised or lowered and also causing a slant of the tracks toward the back of the room. These conditions were such as to cause cars to roll forward, as had happened when the plaintiff was injured. The witness attributed these conditions to the manner in which supports from the piston to the tracks were constructed but also stated that the slanting of the tracks could be increased by a loosening of the rivets on the piston head or by the manner in which cars were placed on the tracks.

By the testimony of other witnesses for the plaintiff it was estimated that anywhere from 1,000 to 4,200 cars a year had been raised and lowered on this lift, with only one other occasion when a car had rolled off. It was also shown that the operators were accustomed to place hammers or other tools under the front wheels of the cars or to push against the front of the cars while they were being lowered, neither of which had been done on the day in question.

This action was brought against the landlord, Atlantic Refining Company as sole defendant, and at the close of the plaintiff's case a motion for nonsuit was made. From the judgment entered on the granting of such motion this appeal is taken.

The liability of the defendant in this cause was predicated upon two grounds: first, that the defendant was negligent in failing "to use reasonable care in making the said premises and appliances * * * reasonably safe for their intended uses and purposes" while "knowing that the same were to be used by the members of the general public;" and, second, that the defendant delivered the premises and appliances to the tenant "in a negligent, defective and dangerous state of

construction and maintenance * * * which constituted a nuisance." Plaintiff here contends that the testimony elicited at the trial was sufficient to sustain either or both of these grounds of liability and that the nonsuit was accordingly improperly granted.

We are here basically concerned with an ordinary situation of landlord and tenant, with exclusive control of the premises in the tenant and no responsibility for repairs resting upon the landlord. It is true that the tenant was required to sell a minimum amount of the landlord's products and that the landlord routinely sent its agents to inspect the premises. However, such arrangements seem to be quite a logical means whereby the company could increase its sales, and there nowhere appears any interference with the tenant's exclusive responsibility for operation of the premises themselves, as provided in the lease. Certainly, with regard to the question of repairs, the landlord had no responsibility in the absence of a contract to that effect and there is no allegation that the injury resulted from repairs undertaken and improperly made.

With respect to the first ground of liability urged by the plaintiff, the general rule is well settled that "upon the letting of a house or lands, there is no implied warranty or condition that the premises are fit and suitable for the purpose specified, or for the use to which the lessees propose to devote them, or indeed for any purpose; and the landlord is therefore under no liability for injuries sustained by the tenant, or his family, by reason of the ruinous condition of the demised premises, unless there has been fraudulent concealment of a latent defect. * * * A landlord is under no greater duty to persons who come upon the leased lands, by invitation of the tenant, than he is to the tenant himself." *La Freda* v. *Woodward*, 125 *N. J. L.* 489; 15 *Atl. Rep.* (2d) 798. Plaintiff contends, however, that in the present case there is applicable the exception expressed in the case of *Martin* v. *Asbury Park*, 111 *N. J. L.* 364; 168 *Atl. Rep.* 612.

In the Martin case the plaintiff was injured as the result of faulty construction of a bathing pavilion erected by the City of Asbury Park and leased to a third person. In defense the city relied upon the general rule as above stated but this

court held that "where an owner designs and devotes a building to public or semi-public use, the public is deemed to be invited to make such use thereof by the owner and the latter cannot evade responsibility of exercising due care to make it reasonably safe by demising it to a tenant." The plaintiff here claims that the service station was designed for public or semi-public use since it could be foreseen that large numbers of people would come upon the premises. In support of this contention there is pointed out the quantities of gasoline and lubricants that the tenant agreed to purchase and the large number of cars that were lubricated each year.

A similar question was considered by this court in *La Freda* v. *Woodward, supra*. There the doctrine of the Martin case was relied upon by the plaintiff who was injured on premises leased for a doctor's office. We held that a public use was not involved and we think that the same ruling is applicable here, particularly since the injury occurred in a workroom used for the lubrication of cars and so constructed that a minimum of space was provided around the lift. Even if the defendant might foresee, and, in fact, desire that large numbers of people would patronize the service station, it certainly cannot be made to assume a legal liability based on a finding that this workroom was devoted to a public use. Accordingly, the Martin case is not applicable here and it follows that under the general rule of law as stated plaintiff did not make out a cause of action on the ground of negligence.

The plaintiff next contends that the defendant company was responsible as a landlord for having constructed and maintained a nuisance on the premises, by which the injury resulted. Support for this proposition is found in the rule that "Where, under ordinary circumstances, a nuisance necessarily ensues from the plainly contemplated manner of use of the thing demised, and is not to be avoided by the tenant's exercise of reasonable care, the landlord is liable for the resulting injury." *Wasilewski* v. *McGuire Art Shop*, 117 *N. J. L.* 264; 187 *Atl. Rep.* 530. And in the same case: "The ground of liability is that he is 'the author of the mischief;' he has, by the letting, put it in the power of the tenant to continue the nuisance and so has affirmed and become a

party to its continuance, and is therefore classed as a tort feasor in respect of a stranger who suffers injury therefrom." In the present case the plaintiff points to evidence that the lift was placed on the premises by the defendant and was being put to its intended use when the plaintiff was injured; that this injury was caused by that use and resulted from conditions affecting the lift which existed prior to the beginning of the tenancy.

A lift such as is involved in this case is not an instrumentality which may be termed a nuisance *per se*. It follows then, that a nuisance could only be present here if the lift were used in an improper or negligent manner or was so constructed as to be inherently dangerous. In reviewing the evidence of this case, and in considering the discussion of the first ground alleged by the plaintiff, it clearly appears that the defendant cannot be charged with using the lift so as to create a nuisance, since exclusive use was in the tenant. The only basis of liability, then, is that which might arise from a faulty construction which resulted in a situation inherently dangerous to others.

There is nothing in this case to indicate that this lift was improperly constructed or installed in the first instance, but it in fact appears to be a regularly manufactured product of a company dealing in such devices. Furthermore, it appears that the lift was used since 1932 with only one minor repair, and that for several of these years at least 1,000 cars a year were raised and lowered without any resulting difficulties. There is evidence that the operators resorted to several means for keeping cars from rolling on the tracks, but a landlord "is not responsible for the tenant's negligence where the premises are capable of the designed use free from danger to strangers." *Wasilewski* v. *McGuire Art Shop, supra.*

The landowner "is not an insurer against the tenant's negligence; he is not a guarantor of the non-negligent use of a contrivance that is not in essence a nuisance at the time of the letting, but may become such thereafter only because of the tenant's failure to exercise reasonable care." *Fletcher* v. *Greater Newark Building and Loan Association,* 123 *N. J. L.* 59; 7 *Atl. Rep. (2d)* 871. To hold a landlord responsible

for injuries to strangers because of a nuisance we must find a condition inherently or continuously capable of harm which is "not to be avoided by the tenant's exercise of reasonable care." *Wasilewski* v. *McGuire Art Shop, supra.* In the instant case the lift was used over a considerable period, and the plaintiff now complains of the first injury which has resulted from such use. We do not think that such circumstances present any legal liability on the part of the defendant.

The findings above set forth make it unnecessary to discuss the other questions argued.

For the reasons stated we are of the opinion that the non-suit was properly granted. The judgment is therefore affirmed.

*For affirmance*—THE CHANCELLOR, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 14.

*For reversal*—None.