ALBERT BRODSKY AND SAMUEL SLAVIN, T/A ELMWOOD VENTURE, ETC. *v.* PRINCEMONT CONSTRUCTION CO.

[No. 252, September Term, 1975.]

*Decided March 24, 1976.*

The cause was argued before ORTH, C. J., and POWERS and MASON, JJ.

*Samuel S. Smalkin*, with whom was *Edwin F. Nikirk* on the brief, for appellants.

*Howard G. Goldberg*, with whom were *Phillips L. Goldsborough, III*, and *Smith, Somerville & Case* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

A skunk trapped in the wall of an apartment building in Frederick started this case. A summary judgment in the Circuit Court for Frederick County ended it. We are not disposed to disturb either one.

The plaintiffs below, appellants here, were named in the declaration as Albert Brodsky and Samuel Slavin, trading as Elmwood Venture, to their own use and to the use of Public Service Mutual Insurance Company. The sole defendant named was Princemont Construction Co.,[1] which is the appellee here.

After a general issue plea, and limited discovery,

---

1. It appears elsewhere in the record that the defendant was a corporation, and that its correct name was Princemont Construction Corporation. It also appears that its president was Sanford Slavin, who was also a general partner in the Elmwood Venture, and that the names Samuel Slavin and Sanford Slavin refer to the same person.

Princemont filed a motion for summary judgment, supported by affidavits and documentary evidence, and by a memorandum. Elmwood and Public Service Mutual filed an answer to the motion, two memoranda in support of the answer, and a supplemental answer. The Circuit Court for Frederick County, Barrick, J., granted the motion and entered judgment for Princemont with costs to be paid by the plaintiffs. This appeal is from that judgment.

Facts which were properly before the court for summary judgment purposes, Maryland Rule 610, *Vanhook v. Merchants Mutual Ins. Co.*, 22 Md. App. 22, 321 A. 2d 540 (1974), may be summarized as follows: On 15 June 1971 Elmwood, as Owner, and Princemont, as Contractor, entered into a construction contract on the standard form of agreement provided by the American Institute of Architects. The contract provided for the performance by Princemont of the "Work", described as construction of 191 garden apartment building units known as Waverly Gardens, in Frederick, Maryland, according to plans and specifications, consisting of five apartment buildings and certain accessory buildings, and parking lots with curb and gutter, sidewalks, paving, and storm drainage. The work was to be commenced within ten days and completed within twelve months. The contract sum to be paid was $1,847,301.87.

From the provisions of the contract we quote paragraphs 21.1 and 21.4, which appear under "Article 21 Property Insurance":

"21.1 Unless otherwise provided, the Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof. The insurance shall include the interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work and shall insure against the perils of Fire, Extended Coverage, Vandalism and Malicious Mischief.

"21.4 The Owner and Contractor waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance

provided under this paragraph. The Contractor shall require similar waivers by Subcontractors and Sub-subcontractors."

By March of 1972 some, but not all, of the apartment units in Building Four were available for occupancy and were occupied by tenants. On 13 March 1972 Robert L. Stonesifer, construction superintendent for Princemont, caused a fire in wing F of Building Four which caused extensive damage and resulted in the loss which is involved in this suit. The events which led up to the fire were related in an answer by Princemont to an interrogatory propounded to it. We quote the answer:

"On March 12, 1972, Robert L. Stonesifer was instructed by Louise Roland, Manager of Waverly Management Company, to remove a skunk from an interior partition wall in wing F, building 4, Section 1, Waverly Apartments. On that day Robert L. Stonesifer attempted to bait the skunk but was unsuccessful. He contacted private and public agencies, who were unable to lend assistance. On March 13, 1972, he attempted to remove the skunk by inserting propane gas into the partition wall from his location in the utility room. An explosion subsequently occurred."

Under the fire insurance policy carried by Elmwood with Public Service Mutual, the insurance company paid Elmwood the sum of $40,979.00 for the loss sustained by reason of the fire which followed the explosion. Public Service Mutual, as assignee or subrogee of Elmwood, claims damages from Princemont for the loss, which it alleges was caused by the negligence of Princemont's employee.

These facts are not disputed. They seem to us to be all that are material to the determination of the legal question raised by the motion for summary judgment. Neither Elmwood nor Public Service Mutual placed the insurance policy itself before the court, but it is obvious that the very foundation of Public Service Mutual's claim is that the policy covered this loss.

It was Elmwood's contractual obligation to "maintain property insurance [against the perils of Fire] upon the entire Work at the site." That insurance was provided and maintained. The policy was issued by Public Service Mutual. A part of the Work was damaged by fire. Public Service Mutual paid Elmwood for the loss, as it was obligated to do.

Appellants argue here, as they did below, that because a portion of one building was complete enough so that apartments in it could be occupied by tenants, that portion was no longer part of the Work under the contract and, therefore, was not entitled to the insurance coverage provided for in the construction contract. The state of partial completion is not disputed, and therefore the issue is not one of fact, but of the legal effect of the undisputed fact.

Under the contract between Elmwood and Princemont, Princemont was clearly responsible for the entire Work until it was completed and, under Article 23, Princemont was further obligated to remedy any defects due to faulty materials, equipment, or workmanship which appeared within one year of the date of substantial completion. There is no showing that the date of substantial completion had been reached; there is no showing that there had been an acceptance or partial acceptance which relieved Princemont from further responsibility as to any part of the Work.

Appellants assert that the policy did not cover Princemont's negligence. This seems to be irrelevant. Fire insurance covers the *property loss* sustained regardless, generally speaking, of its cause. Insurance against negligence indemnifies the negligent person as to his *liability* to another. The appellants also say that the policy did not name Princemont as an insured. We shall assume that it did not because, in our view, it makes no difference. Obviously the policy covered Elmwood, because it is the payment to Elmwood by Public Service Mutual which gave rise to the assignment upon which the use plaintiff, Public Service Mutual Insurance Company, bases its right of action against Princemont.

The question which was decided below and, as we see it,

the only question that requires determination here, is the effect of that part of the contract in which the Owner and Contractor waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance provided under that paragraph.

The claim of Public Service Mutual, as use plaintiff, is asserted in the names of its assignors, the partners constituting the Elmwood Venture. The assignment was not before the court, but it was not necessary because Public Service Mutual is entitled to make the same claim as subrogee by operation of law.

But the law does not give a subrogee, and an assignment cannot give an assignee, a right greater than the right of the person from whom it is derived. As authority for this principle, appellee appropriately cites *Packham v. German Fire Ins. Co.*, 91 Md. 515, 46 A. 1066 (1900), in which the Court quotes the following, at 526:

> "The right of subrogation is derivative, and comes solely from the assured, and can only be enforced in his right. If the assured has no right which he can transfer to the insurer, then the insurer can have no subrogation and, cannot take the place of the assured for the purpose of enforcing the liability of the wrong-doer for the loss."

The Court of Appeals applied the same rule in *Poe v. Philadelphia Casualty Co.*, 118 Md. 347, 84 A. 476 (1912), where the Court said, at 353:

> "In 27 *Amer. & Eng. Enc. of Law* 212, the author of that article, says: 'The surety is entitled to all the rights of the *person* to whose place he is subrogated, *but to no greater rights;*' and again, on page 206, he says: 'The rights acquired by a party entitled to subrogation, cannot be extended beyond the rights of the party under whom subrogation is claimed. Subrogation contemplates some original privilege on the part of him to whose place substitution is claimed, and where no such privilege

exists, or where it has been waived by the creditor, there is nothing on which the right can be based. While a surety who pays the debt of his principal is subrogated to the rights of the holder of the claim, he takes such rights subject to all disqualifications and limitations which attached to them in the hands of his predecessor.'

"It is clear from these accepted definitions that the only element of substitution in subrogation is of one *person* in the place of another, and that the person so substituted can exercise no right not possessed by his predecessor, and can only exercise such right under the same conditions and limitations as were binding on his predecessor."

In legal effect, Elmwood's waiver was Public Service Mutual's waiver. A similar waiver was before the United States District Court for the District of Maryland in *General Cigar Co. v. Lancaster Leaf Tobacco Co.*, 323 F. Supp. 931 (1971). The loss in that case was 7,526 bales of tobacco which were destroyed in a warehouse fire. Two insurance companies paid to General Cigar Co., Inc., the owner of the tobacco, the sum of $429,086. As subrogees of General Cigar's rights, the insurance companies sued Lancaster Leaf Tobacco Company, which, as General Cigar's agent, had purchased the tobacco and arranged for its storage, and Farmer's Warehouse, Inc., owner and operator of the warehouse in which the tobacco was stored.

The facts in *General Cigar* were before the court in the form of discovery depositions and exhibits, and were not in dispute. The case was submitted and decided on motions for summary judgment. Among the facts was this arrangement, set forth in a letter from Lancaster Leaf to General Cigar:

"The tobacco in this purchase will be insured by us, or our suppliers, from the time it is purchased until it is packed * * *. We are moving the tobacco as it is packed into our storages at which time you will cover with insurance."

General Cigar did in fact provide the coverage.

In granting summary judgment for the defendants, Judge Harvey preliminarily stated the Maryland law in this way, at 935:

> "Suing here as subrogees, the insurance company plaintiffs possess only those rights against a third party which their insured might have, and any action taken by such insured which would bar its recovery against a third party would also be binding on the insurers."

The opinion went on to say, at 935:

> "Any conditions or limitations to General Cigar's rights against the defendants, resulting from agreements to which General Cigar was a party or otherwise, must necessarily attach to the claims being asserted here by the insurance company plaintiffs."

Disposing of the contention that the loss was recoverable because it was occasioned by the defendants' negligence or breach of contract, Judge Harvey said, at 941:

> "It has been recognized by numerous authorities that where parties to a business transaction mutually agree that insurance will be provided as a part of the bargain, such agreement must be construed as providing mutual exculpation to the bargaining parties who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party."

Other courts generally take the same view. Among the cases are *Independent School District v. Loberg Plumbing & Heating Co.*, 123 N.W.2d 793 (Minn. 1963); *Mayfair Fabrics v. Henley*, 234 A. 2d 503 (N.J. Sup. 1967); *Smith v. Ryan*, 142 So. 2d 139 (Fla. App. 1962).

We hold that the contract between Elmwood and Princemont contemplated that the risk of damage to the

property by fire would be covered by insurance, and not by either of the parties.

Summary judgment was correctly entered for Princemont, and will be affirmed.

*Judgment affirmed.*
*Appellants to pay costs.*