STEPHEN W. WEEMS ET AL. *v.* NANTICOKE HOMES, INC. ET AL.

[No. 38, September Term, 1977.]

*Decided October 17, 1977.*

The cause was argued before DAVIDSON, MOORE and LOWE, JJ.

*Richard J. Brooks* and *Read K. McCaffrey*, with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellants.

*Thomas J. Keating, IV*, with whom were *Ernest M. Thompson* and *Miller, Wheeler, Thompson & Thompson* on the brief, for appellee Comfort Heating & Air Conditioning, Inc. Submitted on brief by *Roy B. Cowdrey, Jr.*, for other appellee.

MOORE, J., delivered the opinion of the Court.

Two distinct areas of the law of contracts are involved in this appeal. We are first asked to determine the effect to be given to a contractual provision requiring the purchasers of a modular home to obtain fire insurance, effective as of the date the house was placed on the foundation, where the builder's negligence may have been responsible for the destruction of the home by fire. Secondly, we examine the present state of the "third-party beneficiary" doctrine in Maryland, and whether a subcontractor, whose conduct may also have caused the property loss, may insulate itself from liability as an "intended" beneficiary of the insurance provision in the contract between purchasers and builder.

In an action brought in the Circuit Court for Talbot County by the home buyers, Stephen W. Weems and Beth M. Weems, his wife, to their own use and to the use of the Continental Insurance Co., summary judgment was entered

in favor of Nanticoke Homes, Inc., a manufacturer of modular homes, and Comfort Heating & Air Conditioning, Inc., an electrical subcontractor, on their respective motions. The individual and use plaintiffs appeal from these rulings. We will affirm as to Nanticoke, and reverse as to Comfort.

I

Appellants Stephen and Beth Weems were the owners of certain real property bordering Route 50, near Williamsburg, in Talbot County, Maryland. By a contract dated April 23, 1974 and entitled "Proposal No. 1," they agreed to pay the sum of $35,218 to Nanticoke Homes, Inc., a Delaware corporation, for the construction of a residence upon their land. The structure contemplated was a modular home, built at Nanticoke's factory in Greenwood, Delaware. In addition to the standard "56' x 28' Nanticoke Home," the one-page contract listed certain optional features to be included in the unit, as constructed.

In two places, the contract made reference to property insurance. Following the itemization of options was a typewritten statement:

"Insurance in the proper amount to cover any and all losses shall be the responsibility of the Buyer, beginning on the day the house is placed on the foundation."

Later in the document, opposite the signature of Nanticoke's representative, came a paragraph of typeset language presumably part of the form contract itself, which contained the following sentence: "Owner to carry fire, tornado and other necessary insurance."

A major portion of the electrical work on the appellants' home was done by Comfort Heating & Air Conditioning, Inc. in Nanticoke's Delaware factory. The remainder was completed on-site in Talbot County, after delivery of the home on September 11, 1974. Such work was performed in accordance with specifications set forth in a "Mechanical Contract" between Nanticoke and Comfort, effective March 1, 1974.

The modular home was completed on the Weemses' lot on October 1, 1974. Comfort had, by this time, installed the electrical system, and, on October 4th, Choptank Electric Cooperative, Inc., the local power supplier, connected the house to its electric transmission system. On October 7th, prior to the time appellants were to take possession, the home was totally destroyed by fire. Investigators from the Fire Marshal's office could not pinpoint the exact cause of the blaze, but did determine that it originated at or near the electrical panel in the house.

Substantial expenses in replacing the house were incurred by the Weemses, all or most of which were covered and paid for by the proceeds of a fire insurance policy they had purchased from Continental Insurance Co. The Weemses and Continental then brought this action against Nanticoke and Comfort to recover their damages, alleging that the fire was caused by the negligence of one or both defendants. On this appeal, the basic issues for our determination are whether the trial court correctly held that the insurance provision in the contract between the Weemses and Nanticoke served to exculpate Nanticoke from liability for its own alleged negligence, and that Comfort was similarly relieved of liability for its alleged negligence, as a third-party creditor beneficiary of the contract.

## II

With respect to the first issue, the trial court concluded in a comprehensive written opinion that the provisions of the agreement between buyers and builder were susceptible of only one interpretation, namely, that it was the owners' responsibility to insure the house against all perils once it was placed on its foundation; "and if the house was damaged or destroyed thereafter by the occurrence of fire or some other insurable peril, then the owners and Nanticoke must look to the insurer and not to each other to make them whole again, even though the fire might have been caused by the negligence of one or both parties to the contract." We find this holding to be eminently correct. Appellants' efforts to

distinguish or to avoid the impact of the leading cases on the subject are unavailing.

In a recent decision of this Court, *Brodsky v. Princemont Construction Co.*, 30 Md. App. 569, 354 A. 2d 440 (1976), we discussed this identical issue. Plaintiffs in *Brodsky*, the owners of real property, entered into an agreement with defendant, a building contractor, for the construction of certain apartments in Frederick. The contract provided that plaintiffs would insure the property against loss from fire and other perils.[1] Prior to the completion of construction, defendant's superintendent caused a fire in one building while attempting to remove a skunk from an interior wall partition by injecting propane gas into the wall. Substantial losses occurred, all of which were paid by plaintiffs' insurer, Public Service Mutual Insurance Co. In an action brought against the defendant construction company by the property owners and the insurer, as assignee or subrogee of the owners' rights, the plaintiffs alleged that the insurance policy did not cover losses resulting from the negligence of the defendant. The trial court disagreed, entering summary judgment for the defendant, and we affirmed.

Discussing first the insurer's right of subrogation under such facts, this Court, in an opinion by Judge Powers, found that the insurer could have no greater right to recover than that possessed by the insured, quoting *Packham v. German Fire Insurance Co.*, 91 Md. 515, 526, 46 A. 1066 (1900):

> *"The right of subrogation is derivative, and comes solely from the assured, and can only be enforced in*

1. The relevant provisions of the contract were as follows:

"21.1. Unless otherwise provided, the Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof. The insurance shall include the interests of the Owner, the Contractor, Subcontractor and Sub-subcontractors in the Work and shall insure against the perils of Fire, Extended Coverage, Vandalism and Malicious Mischief.

"21.4. The Owner and Contractor waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance provided under this paragraph. The Contractor shall require similar waivers by Subcontractors and Sub-subcontractors."

*his right.* If the assured has no right which he can transfer to the insurer, then the insurer can have no subrogation and, cannot take the place of the assured for the purpose of enforcing liability of the wrongdoer for the loss." 30 Md. App. at 574, 354 A. 2d at 444. (Citations omitted; emphasis added.)

Having determined that the insurance company's rights were dependent upon those of the insured, we discussed the case of *General Cigar Co. v. Lancaster Leaf Tobacco Co.*, 323 F. Supp. 931 (D. Md. 1971), and held, on the strength of that case and authorities in other jurisdictions, that "the contract between [the property owner] and [the defendant] contemplated that the risk of damage to the property by fire would be covered by insurance, and not by either of the parties." 30 Md. App. at 576, 354 A. 2d at 445. The lower court's ruling was therefore affirmed.

The *General Cigar* case, *supra*, was a case of first impression on this issue under Mayland law. The insurance obtained by the plaintiff, General Cigar, pursuant to an agreement with the defendant, Lancaster Leaf, was designed to cover any loss from fire which occurred while the plaintiff's tobacco was housed in storage facilities arranged for by the defendant. When fire did destroy some 7500 bales, General Cigar and its insurer brought suit against Lancaster, charging that its negligence was responsible for the loss, and that it should not be exculpated from liability by virtue of insurance purchased by General Cigar. The court found that the prior agreement to provide insurance was valid, and settled the question of who should bear the loss under the circumstances. Judge Harvey wrote:

"It has been recognized by numerous authorities that *where parties to a business transaction mutually agree that insurance will be provided as a part of the bargain, such agreement must be construed as providing mutual exculpation to the bargaining parties who must be deemed to have agreed to look solely to the insurance in the event of*

*loss and not to liability on the part of the opposing party."* 323 F. Supp. at 941. (Emphasis added.)

The insurer, as well as the insured, was bound by the agreement to substitute insurance for liability, and no right of subrogation existed. Summary judgment for the defendant was therefore entered.[2]

We see little to distinguish the *General Cigar* and *Brodsky* cases from the facts before us here. It appears to us that the provisions in the contract requiring the Weemses to insure the property against loss were a "bargained for" element of the agreement, and the parties were free to contract as they pleased.

Appellants raise two basic arguments for the proposition that the *General Cigar* and *Brodsky* cases should not be followed. First, relying on the case of *Chesapeake & Potomac Telephone Co. v. Allegheny Construction Co.*, 340 F. Supp. 734 (D. Md. 1972), they contend that contracts will not be construed to indemnify a person against his own negligence unless such indemnification is expressed in clear and unequivocal language. Whether we would agree with the decision or not is irrelevant because the contract in the instant case is not a contract of indemnity, as the lower court clearly recognized, but rather an agreement whereby contracting parties shifted the risk of loss by fire to the insurer irrespective of negligence. *Smith v. Ryan*, 142 So. 2d 139, 141 (Fla. App. 1962). Here one party has agreed to *provide insurance* against "any and all loss." Obviously, there is no similarity between such a clause and "hold harmless" or indemnification provisions.

Next, appellants seek to analogize the contract between the parties in this case with those purporting to "indemnify one party against liability for damages arising out of bodily injury or property damage caused by or resulting from the sole negligence of the promisee or indemnitee. . . ." Such agreements are void and unenforceable as contrary to public

---

2. The defendant Lancaster's bailee was also a defendant in the case, and summary judgment was similarly entered in its favor.

policy under Md. Cts. & Jud. Proc. Code Ann. § 5-305 (1974).[3]

Even if this statute were susceptible of retrospective application, it would have no relevance here because, as already stated, the subject contract contains no covenants to indemnify. As Judge Powers stated in *Brodsky, supra:*

> "Fire insurance covers the *property loss* sustained regardless, generally speaking, of its cause. Insurance against negligence indemnifies the negligent person as to his *liability* to another." 30 Md. App. at 573, 354 A. 2d at 443.

We will therefore affirm the trial court's ruling that Nanticoke was entitled to summary judgment as a matter of law. Md. Rule 610; *Hurt v. Stillman & Dolan, Inc.*, 35 Md. App. 644, 371 A. 2d 1137 (1977).[4]

## III

The remaining question for our consideration is whether the contractual provision allocating the responsibility for obtaining insurance to the buyers operated to the benefit of Comfort, as well as Nanticoke. The trial court, in granting Comfort's motion for summary judgment, found that Comfort was a third-party creditor beneficiary of the contract and was therefore exculpated from any liability for damages arising from its negligence, such losses being fully covered by the insurance. We do not agree that Maryland law dictates this result.

---

3. We note, as did the lower court, that this section of the Code became effective on July 1, 1974, more than two months *after* the parties entered into the construction contract.

4. There is substantial support in other jurisdictions for the rule set forth in the General Cigar and Brodsky cases. The following decisions are representative: Newport News Shipbuilding & Dry Dock Co. v. United States, 34 F. 2d 100 (4th Cir. 1929); General Mills, Inc. v. Goldman, 184 F. 2d 359 (8th Cir. 1950), *cert. denied*, 340 U. S. 947 (1951); Cerny-Pickas & Co. v. C. R. Jahn Co., 131 N.E.2d 100 (Ill. 1955); Isley v. Bolling Aero Club, Inc., 148 A. 2d 717 (D.C. Mun. App. 1959); Smith v. Ryan, *supra;* Indep. School Dist. No. 877 v. Loberg Plumbing & Heating Co., 123 N.W.2d 793 (Minn. 1963); Rock Springs Realty, Inc. v. Waid, 392 S.W.2d 270 (Mo. 1965); and Mayfair Fabrics v. Henley, 234 A. 2d 503 (N.J. Super. 1967).

The leading cases in Maryland dealing with the issue of whether a stranger to a contract may claim its benefit rely heavily upon Restatement of Contracts § 133 (1932), which defines the categories of beneficiaries as follows:

"§ 133. Definition of Donee Beneficiary, Creditor Beneficiary, Incidental Beneficiary.

(1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is, except as stated in Subsection (3):

(a) a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary;

(b) a creditor beneficiary if no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary, or a right of the beneficiary against the promisee which has been barred by the Statute of Limitations or by a discharge in bankruptcy, or which is unenforceable because of the Statute of Frauds;

(c) an incidental beneficiary if neither the facts stated in Clause (a) nor those stated in Clause (b) exist.

(2) Such a promise as is described in Subsection (1a) is a gift promise. Such a promise as is

described in Subsection (1b) is a promise to discharge the promisee's duty."

\* \* \*

The rules are thus quite precise as to whether a third-party may enforce a contract which might operate in its favor. If the third-party is neither a creditor nor a donee of a party to the contract, the benefit is merely incidental, and no legal rights under the contract ensue.

*Mackubin v. Curtiss-Wright Corp.*, 190 Md. 52, 57 A. 2d 318 (1948), was the first clear pronouncement of the third-party beneficiary doctrine based upon Restatement § 133. In that case, plaintiff, a shareholder, brought an action to recover certain financial losses sustained through additional stock purchases when defendant corporation failed to announce in a timely manner that an annual dividend had not been declared by its board of directors. A stock-listing agreement between defendant and the New York Stock Exchange required prompt notice to shareholders of any corporate action with respect to dividends, and plaintiff claimed the status of a third-party beneficiary to that agreement. The trial court directed a verdict for the corporation, and the Court of Appeals affirmed, holding that plaintiff had no rights stemming from a contract to which she was not a party:

> "[I]t is generally accepted that before a stranger to a contract can avail himself of the exceptional privilege of suing for a breach thereof, he must at least show that it was intended for his direct benefit. . . . An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee. . . . In order to recover it is essential that the beneficiary shall be the real promisee; *i.e.*, that the promise shall be made to him in fact though not in form. *It is not enough that the contract may operate to his benefit. It must clearly appear that the parties intend to recognize him as the primary party in interest and*

*as privy to the promise.*" 190 Md. at 57-58, 57 A. 2d at 321. (Citations omitted; emphasis added.)

Since the listing agreement gave no right to prospective purchasers of stock, and no injury to plaintiff's rights as a stockholder occurred, plaintiff could not recover her alleged damages.

This issue was again before the Court of Appeals in *Marlboro Shirt Co. v. American District Telegraph Co.,* 196 Md. 565, 77 A. 2d 776 (1950). Plaintiff in *Marlboro,* a lessee of business premises, sued defendant utility company for damages arising from its failure to detect an overflow of water, in accordance with the provisions of a contract between plaintiff's lessor and defendant for the installation and maintenance of a sprinkler system. In response to plaintiff's asserted status as a third-party beneficiary of the contract, defendant alleged that no party to the contract had intended to benefit plaintiff. Citing *Mackubin, supra,* and Restatement § 133, the court found no promise by the defendant *to the plaintiff* to install an alarm system to prevent flooding. Had defendant performed its obligation under the contract, plaintiff would, indeed, have incidentally benefited. Under the Restatement rule, however, no duty was owing to an incidental beneficiary, and plaintiff could not recover for breach of defendant's obligation to the lessor.

Later cases have strictly adhered to the Restatement position that only a donee or creditor beneficiary may enforce an obligation created by a contract to which it was not a party. In *Hamilton and Spiegel, Inc. v. Board of Education,* 233 Md. 196, 199, 195 A. 2d 710, 711 (1963), the court stated:

"In determining whether one is a creditor beneficiary (as is true in the case of a donee beneficiary) the intention of the contract, revealed by its terms, in the light of the surrounding circumstances is the controlling determinative.

*"It is not enough that the contract may operate to the benefit of the one claiming to be a beneficiary."* (Emphasis added.)

A subcontractor, in the above case, was not permitted to avail itself of the defendant's obligation to pay the prime contractor, merely because the defendant had received the benefit of the plaintiff's work. The contracting parties had no intent to make the plaintiff a creditor beneficiary.

Further, in *Shillman v. Hobstetter*, 249 Md. 678, 241 A. 2d 570 (1968), the court emphasized that the rights of a third party are dependent upon the intentions of the *promisee*, since the promisor's reason for making the promise is generally his desire to obtain certain consideration. *See* 4 Corbin on Contracts § 776 (1951). Where the contract clearly indicates an intent that third parties should receive a direct benefit, there is no question that they may seek enforcement against the promisor. "An incidental beneficiary," on the other hand, "acquires no right against the promisor or the promisee." *Bolick v. Board of Education*, 256 Md. 180, 185, 260 A. 2d 31, 33 (1969).

In the case before us, Comfort argues that it was an "intended beneficiary" of the contract between the Weemses and Nanticoke. As previously noted, Nanticoke and Comfort had entered into a "Mechanical Contract" for their collaboration in the construction of Nanticoke's modular homes. Such contract contained several statements of "Purpose," including, *inter alia*, "To see that Nanticoke Homes and Comfort Heating & Air Conditioning, Inc. are more profitable organizations because of this relationship."

The lower court was persuaded by Comfort's contention, finding that the two companies "contemplated a long, continuing, close and mutually profitable business arrangement that almost amounts to a joint venture." This interpretation of the parties' relationship is, we think, clearly erroneous. The "Mechanical Contract" had been in effect for less than two months when the Weemses entered

into their agreement with Nanticoke. Its term was to be "for an indefinate [sic] period of at least one year" and it could "be renegotiated on or about it's [sic] semi-annual anniversary." In our view, the relationship between Comfort and Nanticoke resembled more a temporary, or trial, association, than a permanent, or longstanding, joint undertaking.

The Court of Appeals has not retreated from the view that a party claiming third-party beneficiary status must "show that [the contract] was intended for his direct benefit," *Mackubin v. Curtiss-Wright Corp., supra,* at 57-58, 57 A. 2d at 321, and that such intent stemmed from the promisee's status as a debtor of the third-party, or from donative motives. Even if a close relationship was *contemplated* between Nanticoke and Comfort, no argument can be made that Nanticoke intended to confer a "gift" upon Comfort when it contracted with the Weemses that they were to bear the burden of providing insurance against loss. Unless Comfort, then, meets the requirments for the status of a *creditor* beneficiary, it may claim no rights under the contract. The real question is whether in the language of § 133 (1) (b) of the Restatement "performance of the promise [would] satisfy an actual or supposed or asserted *duty* of the promisee to the beneficiary. . . ." (Emphasis added.)

We can find no "duty" on the part of Nanticoke to insulate its subcontractor, Comfort, from liability for its possible negligence. To conclude, as did the lower court, that Nanticoke had Comfort's interests in mind, equally with its own, in entering into the contract with the Weemses is, we believe, unwarranted by the facts.

Comfort urges us to apply in this case the liberalized principles of Restatement (Second) of Contracts § 133 (Tent. Draft No. 3, 1967), which substitutes the terms "intended" and "incidental" for "donee" and "creditor" in the original Restatement section on third-party beneficiary law. The Court of Appeals has recognized no such change in Maryland law, and we would hesitate to recommend it in this case. Even under the new Restatement section, the requirement

would remain that one party intended to confer a direct benefit upon the other. The record does not establish that Nanticoke so intended to assist Comfort. The trial court therefore erred in granting Comfort's motion for summary judgment.

*Judgment affirmed as to defendant Nanticoke and reversed as to defendant Comfort; cause remanded for trial on the issue of Comfort's liability; costs to be equally divided between appellants and Comfort.*