JULIE LITTLE et al. *v.* UNION TRUST COMPANY OF
MARYLAND, Personal Representative of
the Estate of Sidney H.
Tinley, Jr. et al.

[No. 524, September Term, 1979.]

*Decided April 9, 1980.*

The cause was argued before MORTON, MOYLAN AND
MOORE, JJ.

*Alan Hilliard Legum,* with whom were *Paula Peters* and
*Legum, Cochran, Chartrand & Wyatt, P.A.* on the brief, for
appellants.

*Robert J. Carson,* with whom were *Ronald G. Dawson* and *Smith, Somerville & Case* on the brief, for appellee Union Trust Company of Maryland. *Joseph M. Fairbanks,* with whom were *Weinberg & Green* on the brief, for appellee Joseph M. Schwartz. *Robert L. Davis,* with whom were *L. Dale Burgmeier* and *Goldsborough, Franch & Collett* on the brief, for appellee Maryland Management Corporation.

MOORE, J., delivered the opinion of the Court.

The appellants in this case are tenants of Ken Marr Apartments, in Annapolis, a low-income housing project financed under the National Housing Act, 12 U.S.C., § 1715 (1) (d) (3) (Supp. II 1978). They instituted a class action in the Circuit Court for Anne Arundel County against a general partnership which originally owned the apartments and a corporation which operated and managed them. The gravamen of the declaration was that the owners and managing agent failed to maintain the housing project in "good repair and condition" and that the premises were "unsafe, unsanitary and otherwise unfit for human habitation." The lower court sustained defendants' demurrer to a second amended declaration without leave to amend. We find no error and affirm.

I

According to the second amended declaration, Ken Marr was owned prior to July 29, 1975 by defendants Sidney H. Tinley, Jr., and Joseph M. Schwartz, as partners. Mr. Tinley died subsequent to the filing of the action and Union Trust Company of Maryland, as personal representative of his estate, was substituted.

On June 17, 1970, the owners entered into a "Regulatory Agreement" with the Secretary of Housing and Urban Development (HUD) under § 221 (d) (3) of the National Housing Act, 12 U.S.C. § 1715 (1) (d) (3) (Supp. II 1978). Paragraph 7 of the Agreement provided in part:

> "Owners shall maintain the mortgaged premises, accommodations and the grounds and equipment appurtenant thereto, in good repair and condition."

In Count I of the second amended declaration it was alleged that the plaintiffs were third-party beneficiaries of the above agreement and that the "owner defendants" had breached it by failing to keep the premises, accommodations and grounds in good repair and condition. Specific deficiencies were alleged to include the following:

a. sewer back-ups
b. drainage problems
c. holes in the roofs
d. broken water pipes
e. flooding
f. electrical transformer surrounded by pool of water
g. dilapidated roofs
h. dangerously exposed electrical wiring
i. inadequate electrical wiring
j. lack of adequate plumbing facilities
k. lack of adequate heating facilities
l. improperly fitting doors and windows
m. lack of adequate garbage and refuse storage facilities
n. leaking water line in parking lot
o. downspouting and rain gutters either missing or nonfunctional.

The tenants were not, of course, parties to the Regulatory Agreement. Our study of that document reveals, furthermore, that they are nowhere referenced. Paragraph 7, above quoted, is silent as to them, as is paragraph 14 which provides:

"This instrument shall bind, *and the benefits shall inure to,* the respective Owners, their heirs, legal representatives, executors, administrators, successors in office or interest, and assigns, *and to the Commissioner and his successors* so long as the contract of mortgage insurance continues in effect; and during such further time as the Commissioner shall be the owner, holder, or reinsurer of the

mortgage, or obligated to reinsure the mortgage."
(Emphasis added.)

We deem it abundantly clear that the tenants are, at most, incidental beneficiaries, and it is well settled under Maryland law that an incidental beneficiary of a contract has no cause of action against either the promisor or the promisee. *Weems v. Nanticoke Homes, Inc.,* 37 Md. App. 544, 553, 378 A.2d 190, 195 (1977). It is not sufficient to show that a party may derive some incidental benefit from a contract. *Id.* The rights of a third party are dependent upon a showing that it was the intention of the promisee to bestow a direct benefit upon the third party and that "such intent stemmed from the promisee's status as a debtor of the third party, or from donative motives." *Id.* at 556, 378 A.2d at 197. "In determining the intention of the parties, the language of the instrument is the primary source for the determination." *Shillman v. Hobstetter,* 249 Md. 678, 688, 241 A.2d 570, 576 (1968).

Federal courts have considered the issue precisely as it has been advanced by the appellants under the HUD Regulatory Agreement in this case and have reached the same conclusion — that the tenants are only incidental beneficiaries. Thus, in the recent case of *Falzarano v. United States,* 607 F.2d 506, 511 (1st Cir. 1979), the opinion states:

> *"Plaintiffs allege that they are entitled to recover on the grounds that they are third party beneficiaries of the regulatory agreement between HUD and the landlords. This theory has been raised and rejected before."* (Citations omitted.)
>
> ... Our inquiry must be whether plaintiffs were intended beneficiaries under the regulatory agreement, as merely incidental beneficiaries cannot sue to enforce the contract. Restatement of Contracts § 145; 4 Corbin on Contracts §§ 774, 775, 776, 779C (1951). *The regulatory agreements at issue here do not disclose an intent to benefit the tenants, except as they might be incidental*

*beneficiaries; nor can the tenants qualify as either creditor or donor beneficiaries."* (Emphasis added.)

We find that the court below correctly held that the Regulatory Agreement under the National Housing Act conferred no cause of action upon the tenants. We are not unsympathetic to their claims. It is plain, however, that the purpose of the Act and the Regulatory Agreement was to protect the United States Government as insurer of the mortgages and that any benefit to the tenants was incidental and did not confer upon them the status of third-party beneficiaries.

## II

In Count II of the Second Amended Declaration, appellants have attempted an incursion into the "impenetrable jungle" of the law of nuisance. W. Prosser, *Law of Torts* 571 (4th ed. 1971). The allegations of fact contained in Count I were incorporated in the second count by reference, and the appellants went on to allege that "the deficiencies and conditions" set forth in Count I were a *"public nuisance* within the definition of the Annapolis City Code, FHA minimum property standards and the HUD Regulatory Agreement;" and also that as tenants of the premises, they suffered special damages, "different in kind and degree from that suffered from said nuisance by the general public." Compensatory and punitive damages were prayed.

Appellants' brief claims that the cause of action for nuisance is based on the common law, apparently a withdrawal from the position taken in their declaration that the conditions alleged were "a public nuisance" within the meaning of the Annapolis City Code, the FHA standards, and the Agreement. We observe in this connection that there is no allegation and no apparent contention that any of the legislative enactments specifically declared the alleged conditions "nuisances;" and even if the appellees were in

violation of the Annapolis housing code, this would not necessarily constitute a nuisance. Where an act or use does not constitute a nuisance *per se,* it does not become a nuisance by violation of a building code or housing ordinance. *Cook v. Normac Corp.,* 176 Md. 394, 4 A.2d 747 (1939).

We think the short answer, at all events, to appellants' contentions is that no "public nuisance" has been alleged. In Prosser, *supra,* the author speaks of the meaning of public nuisance in the following language:

> "No better definition of a public nuisance has been suggested than that of an act or omission 'which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all Her Majesty's subjects.' *The term comprehends a miscellaneous and diversified group of minor criminal offenses, based on some interference with the interests of the community, or the comfort or convenience of the general public.* It includes interferences with the *public health,* as in the case of a hogpen, the keeping of diseased animals, or a malarial pond; with the *public safety,* as in the case of the storage of explosives, the shooting of fireworks in the streets, harboring a vicious dog, or the practice of medicine by one not qualified; with *public morals,* as in the case of houses of prostitution, illegal liquor establishments, gambling houses, indecent exhibitions, bullfights, unlicensed prize fights, or public profanity; with the *publice* [sic] *peace,* as by loud and disturbing noises, or an opera performance which threatens to cause a riot; with the *public comfort,* as in the case of bad odors, smoke, dust and vibration; with *public convenience,* as by obstructing a highway or a navigable stream, or creating a condition which makes travel unsafe or highly disagreeable, or the collection of an inconvenient crowd; and in addition, such unclassified offenses as eavesdropping on a jury, or being a common scold.

> To be considered public, the nuisance must affect
> an interest common to the general public, rather
> than peculiar to one individual, or several."

Prosser, *Law of Torts* 583 (4th ed. 1971) (citations omitted) (emphasis added).

Contrary to appellants' position in their brief, there is no support under Maryland law, nor case law elsewhere, for the proposition that improper maintenance of rental premises, in the manner alleged in the declaration in this case, constitutes a public nuisance, as thus defined. The case of *Burley v. City of Annapolis,* 182 Md. 307, 34 A.2d 603 (1943), upon which appellants rely, is clearly not supportive of their argument. In *Burley,* the municipal authorities of the City of Annapolis, under an assertion of power to suppress nuisances, revoked the required license of the appellant to operate billiard tables, doing so on the ground that appellant had been found guilty of operating a gambling house on the premises. On an appeal from an order dismissing the former licensee's petition for a mandamus to compel the return of the license, the Court of Appeals defined public nuisance in much the same manner as Prosser, *supra,* and concluded that appellant's place of amusement did not fall within the definition.

The Court stated:

> "To act under its nuisance powers in such cases the city of Annapolis must first prescribe by general ordinance what are nuisances, and make provision for their removal. Here we have, however, no ordinance, no general declaration of what is a nuisance, or what becomes a nuisance and when. We do not even have the city authorities determining that this particular place is a nuisance. We have them taking away the appellant's license to conduct a lawful business, and leaving him in the possession of the premises where the unlawful gambling was once conducted. No attempt is made to close the premises for use by the appellant for other purposes. It is apparent that the

city was not acting under any powers of preventing nuisances which it had under its charter."

*Burley v. City of Annapolis, supra,* 182 Md. at 313, 34 A.2d at 606.

We also observe that the appellants cannot rely on the public access to the common areas to establish a public nuisance as maintained in their brief, since the declaration contains no reference to any such common areas nor are there any allegations concerning the public right of "access."

Appellant's position here is reminiscent of attempts by tenants to proceed against a landlord for personal injuries based on a nuisance theory; such efforts have been repulsed by the Court of Appeals. Instead, the tenant must proceed by way of traditional negligence theory, as the Court ruled in *State v. Feldstein,* 207 Md. 20, 35, 113 A.2d 100 (1955):

> "We have found no Maryland case in which recovery has been allowed by a tenant against a landlord on the theory of nuisance in an allegation of injury like that in the fourth counts of the declarations and we see no reason to extend the definition of nuisance. In cases like the instant ones the plaintiff must recover, if at all, on the theory of negligence."

Put simply, a "nuisance exists because of a violation of an absolute duty so that it does not rest on the degree of care used...." *Sherwood Brothers, Inc. v. Eckard,* 204 Md. 485, 493, 105 A.2d 207 (1954). Appellants' grasp for a nuisance theory against a landlord can be no more availing here than in the decided cases involving personal injuries. *See, e.g., Maenner v. Carroll,* 46 Md. 193 (1877); *Smith v. Walsh,* 92 Md. 518, 48 A. 92 (1901); *Sherwood Brothers, Inc. v. Eckard, supra,* 204 Md. 485, 105 A.2d 207 (1954); *State v. Feldstein, supra,* 207 Md. 20, 113 A.2d 100 (1955).

In sum, we reject the claim that the alleged improper maintenance of individual rental units constitutes a public nuisance. What is, in essence, involved in this appeal is a

damages claim for failure to maintain the demised premises. This is the only act or omission charged to the appellees in the declaration. By attempting to assert a cause of action based upon public nuisance, appellants are seeking to overcome settled principles of Maryland law that, in the absence of an express covenant, the landlord is under no duty to keep the premises in repair. *Miller v. Howard,* 206 Md. 148, 155, 110 A.2d 683, 685-86 (1955); and there is no allegation that the landlords in this case made any such covenant.[1]

It is accordingly our conclusion that the demurrers to the second amended declaration were properly sustained without leave to amend.

*Order affirmed; appellants to pay the costs.*

___

1. We are told that the form of lease which the tenants filed in reply to a demand for production of written instruments shows that the lease executed by the tenants in this case expressly placed the duty of repair on the tenant, not the landlord.