## Florence Clerken, Appellant, v. Hyman Cohen, Appellee.

### Gen. No. 42,065.

Heard in the first division of this court for the first district at the December term, 1941. Opinion filed July 1, 1942.

Francis E. Cash, of Chicago, for appellant.

Miller, Gorham, Wescott & Adams, of Chicago, for appellee; Edward R. Adams and Herbert C. De Young, both of Chicago, of counsel.

Mr. Justice Matchett delivered the opinion of the court.

Defendant Cohen is the owner of premises improved with an eight-room cottage which he leased to William Folan. He was sued by plaintiff, a visitor by invitation to the Folan home, for damages said to have been sustained by her when, leaving from the home, she slipped and fell on steps used for ingress and egress. The cause was tried by jury, and at the conclusion of plaintiff's evidence the court directed a verdict for defendant. Judgment was entered, and plaintiff appeals.

The evidence shows without contradiction defendant Cohen was the owner of the premises known as 4107 Van Buren street in Chicago; that a cottage thereon was leased to William Folan, who was in possession when plaintiff, on January 31, 1940, fell on the steps and was injured.

Plaintiff's complaint is in six counts. Numbers 1 and 2 charge that defendant retained and exercised control over the steps leading into the home and under the roof of the porch. She avers that it was the duty of defendant to keep the same in a reasonably safe condition ''for ingress and egress by all persons lawfully on the premises.''

It was charged defendant neglected to equip and maintain gutters, troughs or similar devices upon the roof over the steps and permitted water and melted snow to fall, drip, drain and discharge upon the steps of the stairway, collect thereon and freeze, becoming dangerous, by reason whereof, while on the premises as a guest of Folan, she slipped and fell.

It is conceded to be the general rule of law (citation of authorities unnecessary) that an owner is not liable to the guest of a tenant for injuries received on account of defects in the premises or failure to keep the same in repair. *Woods v. Lawndale Theater Corp., Inc.*, 302 Ill. App. 570; Prosser on Torts, p. 648, § 81. There are a number of exceptions to the general rule. One is that where the lessor retains control of a part of the premises which the tenant is permitted to use, he may be liable for failure to exercise reasonable care as to that part. Plaintiff's theory as to the two counts is that defendant actually retained control of these steps, the porch and the roof over it. If he did retain such control he would be liable for failure to exercise reasonable care. *Murphy v. Illinois State Trust Co.*, 375 Ill. 310. There is no evidence in the record showing any such control was retained by defendant or exercised by him. Plaintiff argues such control from the language of the lease. As a matter of fact, on the trial she first offered the lease in evidence, and afterwards (ascertaining the views of the trial judge) voluntarily withdrew it. Now, in this court, she undertakes to argue from it. This cannot be permitted. She cannot try her case on one theory in the trial court and another theory here.

Folan testified for plaintiff. His evidence showed that he and his family were in possession of the entire premises. The house contained eight rooms. There are several pictures of it in the record. On the first story was a living room, dining room, kitchen, pantry, bathroom and two bedrooms. The upper story consisted of a large sleeping room and an unfinished garret. The stairway from the sleeping room to the lower floor ran in between the kitchen and bathroom. In order to reach the stairway from the back door it was necessary to go through the kitchen. From the front door it was necessary to go through the living room. There was no outside stairway to the sleeping

room or the attic. Folan and his wife lived together in this house. They had ten children who lived with them. His mother-in-law, his brother-in-law and a girl named Mary Hamill, also lived in the house, a total of fifteen occupants. The trial judge was justified in concluding that the Folan family occupied the entire house. There was a garage in the rear of the premises. There is no proof whether it was rented or who occupied it. It was not an integral part of the house. Nor is there any proof that, as a matter of fact, it was used at all. On the uncontradicted evidence the court rightly held, as a matter of law, that Folan, not defendant, was in control of the front porch, the front steps and the roof over the porch. It was by way of these steps only that Folan and his family could get into and out of the house. As a matter of law, plaintiff could not recover on these two counts.

Plaintiff complains evidence was excluded tending to show that defendant lived next door; that he had at different times carried garbage away from the premises, and that he had replaced screen doors which needed to be replaced, etc. Questions were asked as to these matters and excluded. In the absence of further proof tending to show that defendant had retained control over some part of the leased premises this evidence was wholly immaterial. *Sunasack v. Morey,* 196 Ill. 569, 571; *Long v. Joseph Schlitz Brewing Co.,* 214 Ill. App. 517, 520; *Farmer v. Alton Building & Loan Ass'n,* 294 Ill. App. 206, 212.

Plaintiff's other counts are based on the theory that the house, when leased by defendant, was in a dangerous and defective condition, and that the owner was liable for that reason. The evidence also shows there was no spout on the roof of the porch when the premises were leased. There is, however, no proof that there was any ice on the steps at that time. Plaintiff cites *City of Chicago v. Atwood,* 269 Ill. 624, where the opinion quotes *Miller v. Fisher,* 111 Md. 91, to the

effect that "where the owner leases premises which are a nuisance, or must in the nature of things become so in their use, and receives rent, then, whether in or out of possession, he is liable." In the *Atwood* case the owner was held liable on suit by the City for permitting a nuisance upon his premises contrary to the provisions of a city ordinance. In the *Miller* case the suit was by one owner against an adjoining owner for failing to maintain pipes to carry off polluted water which was discharged upon the plaintiff's premises. The facts of neither case are in any way analogous to those which exist here. Other Illinois cases cited are *Stephani v. Brown,* 40 Ill. 428, 433; *Gridley v. City of Bloomington,* 68 Ill. 47; *City of Peoria v. Simpson,* 110 Ill. 294; *City of Canton v. Torrance,* 151 Ill. App. 129, and *Tomle v. Hampton,* 129 Ill. 379. The cases all consider a situation where an adjoining owner by negligent construction made dangerous the public streets or sidewalk.

*Reichenbacher v. Pahmeyer,* 8 Ill. App. 217, is another case relied on. This case is interesting in that the defendant owner of a building erected and used for a hotel, in which was a public bar room, was held liable to the plaintiff (a third party), who was injured by a chandelier suspended from the ceiling of the bar room in such a way as to be dangerous and unsafe, and the defendant, knowing this, made the lease of the house to be used for these purposes. The opinion considers at length and is largely based on the case of *Swords v. Edgar,* 59 N. Y. 28, where the owner of a pier leased it while it was in a dangerous condition. The owner lessor was held liable to plaintiff's intestate, a longshoreman, not a party to the lease, who was fatally injured while using the pier on account of its defective construction. That case reviews the authorities from *Roswell v. Prior,* 2 Salk. 459, 12 Mod. 635. The decision is based on the ground that the pier, at the time of its leasing, was defective

and dangerous as the owner knew, when considered for the purpose for which it was to be used. The decision was that an owner could not relieve himself of liability in such a case by transferring his duty to another. Three judges dissented. The *Prior* case was one where an owner of premises was held liable for failing to maintain pipes sufficient to carry polluted waters from his own premises away from instead of upon the premises of his neighbor.

There is much said in all these opinions about nuisances, and it would be an interesting study to consider the development of English law on this subject. (See Holdsworth's History of the English Law, vol. 8, pp. 424, 425.) We note that in the Restatement of the Law of Torts, ch. 40, p. 215, the authors say that while stating the rules of liability in an action for damages for private nuisances, it is desirable to avoid the use of the term because it is attended with so much confusion and uncertainty of meaning. In the recent work of Prosser on Torts, ch. 13, p. 549, the author's views are stated as follows: "There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.' It has meant all things to all men, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie. There is general agreement that it is incapable of any exact or comprehensive definition. Few terms have afforded so excellent an illustration of the familiar tendency of the courts to seize upon a catchword as a substitute for any analysis of a problem; the defendant's interference with the plaintiff's interests is characterized as a 'nuisance,' and there is nothing more to be said. With this reluctance of the opinions to assign any particular meaning to the word, or to get to the bottom of it, there has been a rather astonishing lack of any consideration of 'nuisance' on the part of legal writers. It is not until a very recent date

that anything significant has been done to determine some definite limits to the types of tort liability which are associated with the name."

Whatever the definition of "nuisance," either public or private, may be, we hold the term is not applicable to the facts of the instant case. No ordinance or statute made it the duty of defendant to put gutters on the roof of the porch, or to put a roof over it at all. The lack of gutters could not reasonably be expected to cause damage beyond the limits of the premises. In no sense of the word could this defect amount to what is ordinarily spoken of as a "common nuisance." Unless enclosed, any part of this house, or any other, would in cold weather be subject to accumulations of snow and rain and ice. There was nothing hidden or latent about this supposed defect in the premises. The lessee or a third party coming upon the premises could see the situation just as well as the owner. There was a simple way to have avoided all danger. This was for the party in possession, whose duty it was to remove the snow from the steps before the water froze into ice, to remove it or to remove the ice after it was formed. Careful occupiers of premises with open porches do this. No case is cited in the briefs, and it is believed none can be found where any owner has ever been held liable on plaintiff's theory and upon facts analogous. We hold, as a matter of law, plaintiff could not recover. *Soibel v. Oconto Co.*, 299 Ill. App. 518, 521; *Fraser v. Kruger*, 298 Fed. 693, 696.

The court properly instructed the jury to return a verdict in defendant's favor and properly entered judgment on it, which will be affirmed.

*Affirmed.*

McSURELY, P. J., and O'CONNOR, J., concur.