STATE, USE OF BOHON ET AL. *v.* FELDSTEIN
(Six Appeals in One Record.)

[No. 94, October Term, 1954.]

*Decided April 15, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Walter C. Capper, Thomas N. Berry* and *Thomas Lohr Richards,* with whom were *J. Pat Nichols* and *H. G. Shores* on the brief, for the appellants.

*W. Earle Cobey* and *William J. Gunter,* with whom were *William A. Gunter* and *F. Brooke Whiting* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

Here are six appeals in one record from the sustaining of demurrers in six cases, based on identical facts with different plaintiffs. Before us specifically are the second amended declarations in two cases, the first No. 34, which we will designate as the first case, and the second No. 64, which we will designate as the second case.

The declaration in the first case consists of four counts. The first count alleges that one Marvin Paul Bohon, late of Allegany County, Maryland, deceased, was the father of the equitable plaintiffs, Catherine Marie Bohon, Infant, Martha Rosalie Bohon, Infant, Alma Nadine Bohon, Infant, and Marvin Junior Bohon, Infant, at the time of his death on or about November 18, 1952. The defendant, appellee, Abraham Feldstein, is the owner of an apartment house in Cumberland, Maryland, which he has maintained, offered, managed and rented to the public generally. On or about the 15th day of November, 1952, the said Marvin Paul Bohon, did rent and on the 17th day of November, 1952, did occupy as his residence the second floor west apartment of the said Abraham Feldstein. This second floor apartment was equipped with a gas-fired, manually operated hot water heater, which had been unlawfully and negligently installed in the bathroom of said apartment by the appellee. The hot water heater at the top had an opening approximately three inches in diameter with integral flanges, designed to be connected with a vent pipe to carry off the odorless, colorless, tasteless and poisonous carbon monoxide gas and other fumes generated by the com-

bustion of the natural gas burned therein. However, the said gas hot water heater was not connected with a vent pipe, or a chimney, nor were there other means of discharging fumes dangerous to persons present in said premises so that all the carbon monoxide and other fumes or gases were discharged directly into the said resident premises. *The said appellee knew* that the said gas hot water heater should have been properly vented or connected to a flue or chimney. The gas hot water heater was delivered to the appellee with a printed notice or set of instructions that it must be connected to a flue for a suitable draft, that it was unsafe and inherently dangerous to install said appliance without proper provision for the safe venting and discharge of the said carbon monoxide and other combustion fumes or gases outside of the resident premises, and that carbon monoxide, when allowed to accumulate in closed areas occupied by persons, renders said premises dangerous and unsafe to human life. This printed notice or set of operating instructions stated that said operating instructions should be hung near the heater, giving warning that extreme caution should be taken that the device be properly adjusted and operated and warning the user to be sure that the hot water heater was connected to said flue. It was then and there the duty of the said defendant to install and maintain said hot water heater in said rental premises in a safe, lawful and proper manner, accompanied by said operating instructions and warning. The said defendant, disregarding his duty in this regard, did offer and rent to the said Marvin Paul Bohon the said second floor apartment in a dangerous, defective and unsafe condition as aforesaid. On or about the 18th day of November, 1952, the said Marvin Paul Bohon, while lawfully occupying said rental premises as tenant of the defendant aforesaid, without knowledge or warning of the necessity of a flue as aforesaid, the absence of which constituted a latent defect in said premises, was then and there caused to inhale a fatal amount of carbon mon-

oxide gas generated by the unvented, inherently dangerous and unlawfully installed gas hot water heater, directly resulting in his death by asphyxiation in said apartment premises.   (Italics supplied here.)

The second count contains the same allegations as to the failure to install the vent pipe to the heater.   It also contains the following allegations.   The said gas hot water heater was equipped with an adjustable air port or air intake opening, located at the point where the natural gas supply line entered a mixture chamber wherein the gas and air were mixed before entering the burner.   The proper combustion of the gas and air mixture depended upon the proper adjustment of the shutter or metal plate controlling the size of the opening of the air port or intake.   The said air port or intake valve is located underneath the burner assembly.   When in place it is locked in proper adjustment position by means of a small set screw or nut hidden from ordinary observation.   The said gas water heater was delivered to the defendant with a printed notice which contained instructions as to the proper method of installing, adjusting and locking into position said air port adjusting mechanism.   The said adjusting mechanism remained in the control of said defendant, and was separate and apart from the manually operated gas burner valve intended for the use of persons using said gas water heater, and was in such position as not to be known to or in the control of persons turning on or off said heater in ordinary uses.   The said air port or air intake valve was not properly adjusted at the time said apartment premises was rented to the decedent and constituted a hidden defect. *That the said landlord or his agents or servants knew or should have known* that said air intake was not properly adjusted which caused said burner to generate carbon monoxide gas, a deadly poison. *The defendant knew or should have known* that it was dangerous and unsafe to install said appliance without proper provision for the safe and secure adjustment of said air port valve and without proper pro-

vision for venting and discharging the said carbon monoxide gas, which, when allowed to accumulate in said apartment and actually occupied by persons, constituted a latent defect rendering said premises dangerous and unsafe to human life. It was then and there the duty of said defendant to install and maintain said hot water heater in a lawful, safe and proper manner, duly safeguarding the said decedent from said hidden defects. However, said defendant disregarded his duty and rented the said premises to the said Bohon and permitted the said Bohon to occupy said premises without notice of said hidden defect. On or about November 18, 1952, the said Bohon was caused to inhale a fatal amount of carbon monoxide gas from the said hot water heater resulting in his death by asphyxiation in said apartment. (Italics supplied.)

The third count contained the same allegations as to the failure to install the vent for the heater and the improper adjustment of the air intake valve and alleged that such installation was unlawful without obtaining a building permit required by the Building Code of Cumberland, as set out in Chapter 1, Section 3, Sub-section (a), as revised in 1940. The demurrer to that count was overruled and, therefore, that count is not now before us in these cases.

The fourth count made the same allegations as to the lack of the vent for the burner and the improper adjustment of the air port valve and alleged that thereby *"the Defendant created, continued and maintained a private nuisance on his said premises,"* and that said condition, which constituted a private nuisance, caused the death of the said Marvin Paul Bohon. (Italics supplied.)

In the second case the allegations in the first and second counts of the declaration are the same as those in the first and second counts of the first case except that, where in the first count in the first case it was alleged *"that the said Defendant knew,"* the first and second counts in the second case alleged *"that the said*

*Defendant knew or should have known."* The third count, as in the first case, is not now before us here. The allegations of the fourth count in the second case are substantially similar to those in the fourth count in the first case. (Italics supplied.)

Demurrers were sustained to the first, second and fourth counts of the aforesaid declarations in both cases but no judgments were entered on the sustaining of the demurrers. It has been frequently stated by this Court that an order sustaining a demurrer is not a final judgment and, therefore, that appeals therefrom are premature and must be dismissed. *O'Keefe v. Scott,* 198 Md. 310, 83 A. 2d 860, and cases there cited; *Hunt v. Tague,* 205 Md. 369, 109 A. 2d 80. It was said by this Court in the case of *Riddell v. Douglas,* 60 Md. 337: "Where the demurrer is to the whole declaration, and the demurrer is sustained, the defendant is entitled to judgment, unless the plaintiff asks leave to amend. If, however, the demurrer is to some of the counts only, and the demurrer is sustained, the plaintiff may amend the declaration, by the addition of other counts, or he may stand on the counts admitted to be good. Strictly speaking, the defendant is entitled to judgment on the demurrer to the defective counts, but the usual practice is, merely to strike out the bad counts, unless the defendant insists on judgment as to such counts." *Poe on Pleading, Vol. 1, Tiffany's Edition,* page 620, Section 591. On account of the seriousness of these cases we allowed the appellee, after the argument of the cases in this Court, to obtain judgments on the first, second and fourth counts of the declarations and all parties to refile the briefs. We will, therefore, treat the cases as if these judgments were obtained previous to the argument in this Court.

None of the counts in the declaration before us allege that there was no contributory negligence on the part of the plaintiff. In *State, Use of Dodson v. Baltimore & Lehigh R. R. Co.,* 77 Md. 489, 26 A. 865, a judgment had been obtained in favor of a defendant for

failure to allege that the person injured was using due care at the time the damage was inflicted. It was said in that case: "It is not to be doubted that the Maryland Central Railroad Co., if it were in existence, would be responsible for the injuries alleged in the declaration, unless the evidence should show that it was exempted by some of the causes which excuse a master for injuries sustained by his servant; provided there was no contributory negligence on the part of the deceased. This is an indispensable inquiry for the jury; and it is usual to aver in the declaration, that the person injured was using due care at the time the damage was inflicted. The forms set forth in the Code seem to require this averment as necessary. Art. 75, sec. 23, form 36. [Code, 1951, Art. 75, Sec. 28, Form 36]. It is not contained in the declaration we are considering; and as the question is presented by the demurrer, we must hold the pleading insufficient." *Poe on Pleading,* Vol. 1, Sections 456 and 572; *Phil. B. & W. R. Co. v. Allen,* 102 Md. 110, 62 A. 245.

Although it is not alleged in any of the counts before us when the gas heater was installed in the apartment, at the hearing in this Court it was agreed between the parties here that this installation was sometime about the year 1942. We will consider this conceded fact as if it were included in the declarations.

It is said in *Restatement of the Law of Torts,* Section 356: "CONDITIONS EXISTING WHEN LESSOR TRANSFERS POSSESSION: GENERAL RULE. Except as stated in 357 to 362, a lessor of land is not liable for bodily harm caused to his lessee or others upon the land with the consent of the lessee or a sub-lessee by any dangerous conditions whether natural or artificial which existed when the lessee took possession." One of the exceptions to this rule is Section 358(b) that, where "the lessor knows of the condition and realizes the risk involved therein and has reason to believe that the lessee will not discover the condition or realize the risk." It was said in *Sherwood Bros., Inc. v. Eckard,* 204 Md. 485,

105 A. 2d 207: "The general rule is that the landlord is liable for injuries to persons on leased premises, such as guests or customers of the lessee, only to the same extent as he is to the tenant himself. Accordingly, in the ordinary case, the landlord is not liable for injuries caused by defects existing at the time of the lease except as he may have failed to inform the lessee of defects *known to him, and not apparent to the lessee.* *Tiffany, Real Property,* 3rd Ed., Vol. 1, Sec. 107; *Smith v. State, Use of Walsh,* 92 Md. 518; *Sezzin v. Stark,* 187 Md. 241, 248." (Italics supplied.) *Harris v. Lewistown Trust Co.* (Pa.), 191 A. 34; *Tiffany on Landlord and Tenant,* (1910 Ed.), Vol. 1, Sec. 86, page 556. The trial judge sustained the demurrer to the first count in the first case for the reason that "An unvented gas hot water heater could not possibly be considered a latent defect. The lack of a pipe connecting the heater to a flue is as apparent to the tenant as to the landlord. The set of instructions that were delivered with the heater did not change the basic law." As argued by the appellee, a latent defect is one which a reasonably careful inspection will not reveal. 24 *Words and Phrases,* page 306; *Sunasack v. Morey,* 196 Ill. 569, 63 N. E. 1039; *Cowen v. Sunderland,* 145 Mass. 363, 14 N. E. 117; *Tiffany on Landlord and Tenant,* Vol. 1, pages 562, 563. The mere fact that there was an opening three inches wide in the top of the heater surrounded by a raised flange would not, as a matter of law, be notice to the tenant that a vent was necessary. See also *Kinnier v. J. R. M. Adams, Inc.,* 142 Md. 305, 306, 120 A. 838; *Commercial Realty Co. v. National Distillers Products Corp.,* 196 Md. 274, 280, 76 A. 2d 155; *Kelly v. Pittsfield Coal Gas Co.,* 257 Mass. 441, 154 N. E. 74; *Fenton v. Hart,* (Missouri), 73 S. W. 2d 1034. We are, therefore, of the opinion that the demurrer to the first count of the declaration in the first case should have been overruled, if there had been an allegation of no contributory negligence on the part of the plaintiffs.

As previously stated herein, the allegation in the second count of the first case and in the first and second counts in the second case is that the landlord *should have known* of the improper installation of the heater and the improper adjustment of the air port or intake valve. The appellants rely strongly on the case of *Albert v. State, Use of Ryan,* 66 Md. 325, 7 A. 697. In that case Albert was the owner of a place known as Holly Grove situated on the Patapsco River, in front of which was a wharf erected by him. He rented the premises to one Frank Debilius, who used the premises as a summer resort. While Patrick Ryan, the father of the equitable plaintiff, was passing over the wharf to reach a boat, a portion of the wharf gave way, by reason of the defective and rotten condition of the timber thereof, and Ryan was drowned. The appellants rely on the following quotation from that case: "That instruction substantially laid down the law to be, and so instructed the jury, that if they found that the defendant was the owner of the wharf, and that he rented it out to a tenant, and that at the time of the renting, the wharf was unsafe, and defendant knew, or by the exercise of reasonable diligence could have known, of its unsafe condition, and that the accident happened in consequence of such condition, the plaintiff was entitled to recover." However, we must note that this was not an action by the tenant against the landlord, but an action by a third party for the death of a third party. In *Sherwood Bros., Inc. v. Eckard, supra,* it was said at page 490: "*Restatement, Torts,* Sec. 359, states that where a lessor leases his land for a purpose which involves admission of a large number of persons as patrons of his lessee, he is subject to liability for bodily harm caused to them by an artificial condition existing when the lessee took possession, if the lessor knew or should have known of the condition and realized, or should have realized the unreasonable risk to them involved therein and had reason to expect that the lessee would admit his patrons before the land was put in reasonably safe condition for their reception. The com-

ment points out that liability is limited to patrons who are admitted for the particular purpose for which the land was leased and excludes business invitees on the land for their own purposes. Examples of such leases given are for an exhibition rink, a baseball park, a steamship wharf and a bathing beach." Cases involving contemplated uses by the public are governed by a different rule than those involving landlord and tenant. *Davis v. Hochfelder*, 153 La. 183, 95 So. 598, relied on by the appellants, turns on a statutory provision which is contrary to the common law here. It is said in *Prosser on Torts*, page 651: "Some courts apparently require that the lessor have actual knowledge of the existence of the condition before he is under any duty in regard to it. The greater number have held, however, that it is sufficient that he has information which would lead a reasonable man to suspect that the danger exists, and that he must at least disclose such information to the tenant." Among the cases relied on for the latter statement is the case of *Cesar v. Karutz*, (1875), 60 N. Y. 229, 19 Am. Rep. 164. There the tenant sued the landlord for leasing him premises infected by a contagious disease without notifying the tenant of this infection. The trial judge there charged the jury that unless the defendant knew or had reasonable notice that the premises were infected, the plaintiff could not recover. In *Cutter v. Hamlen*, (1888), 147 Mass. 471, 18 N. E. 397, a landlord rented premises to a tenant in which a former tenant's child had died of diphtheria. There the declaration alleged that the landlord knew of this condition. In *Howell v. Schneider*, (1904), 24 App. D. C. 532, the landlord had "reason to know." In *Meade v. Montrose*, (1913), 173 Mo. App. 722, 160 S. W. 11, it was held that the landlord was not liable for concealed defects unless he knew of them or had knowledge of facts from which he must have been presumed to have known them. *Prosser* also relies on *Restatement, Law of Torts*, Section 358, which follows: "CONCEALED DANGEROUS CONDITIONS KNOWN TO LESSOR. A lessor of land, who conceals

or fails to disclose to his lessee any natural or artificial condition involving unreasonable risk of bodily harm to persons upon the land, is subject to liability for such harm caused thereby to the lessee and others on the land with the consent of the lessee or a sublessee after the lessee has taken possession, if (a) the lessee does not know of the condition or the risk involved therein, and (b) the lessor knows of the condition and realizes the risk involved therein and has *reason to believe* that the lessee will not discover the condition or realize the risk." (Italics supplied). It is stated in *Restatement, Law of Torts,* Section 12, as follows: "Comment: a. Both the expression 'reason to know' and 'should know' are used with respect to existent facts. These two phrases, however, differ in that 'reason to know' implies no duty of knowledge on the part of the actor whereas 'should know' implies that the actor owes another the duty of ascertaining the fact in question. 'Reason to know' means that the actor has knowledge of facts from which a reasonable man of ordinary intelligence or one of the superior intelligence of the actor would either infer the existence of the fact in question or would regard its existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist. 'Should know' indicates that the actor is under a duty to another to use reasonable diligence to ascertain the existence or non-existence of the fact in question and that he would ascertain the existence thereof in the proper performance of that duty." With the allegation in these counts that a printed notice or set of installation instructions were delivered to the defendant, which stated that the gas water heater should be connected to a flue and giving instructions as to the installation and locking of the air port valve, we are of opinion that the allegation should have been that the landlord "had reason to know" instead of "should have known." The cases relied on by the appellants where the landlord retained control of a part of the premises for the common use of other tenants are not in point

here. We will sustain the demurrers to the counts which allege that the landlord "should have known" and allow the appellants to amend, if they see fit, and state that he "had reason to know."

As to the fourth counts in the two cases in which it is alleged that "the Defendant created, continued and maintained a private nuisance on his said premises," we are of opinion that the demurrers to those counts were properly sustained. It was said by Judge Hammond in *Sherwood Bros., Inc. v. Eckard, supra,* at page 493: "A nuisance exists because of a violation of an absolute duty so that it does not rest on the degree of care used but rather on the degree of danger existing with the best of care. Negligence, on the other hand, is the violation of a relative duty for failure to use a degree of care required under particular circumstances. * * * 'To constitute any particular thing a legal nuisance *per se* (apart from statute nuisances), as between lessor and lessee and the servants of the lessee, the thing itself must work some unlawful peril to health or safety of person or property, * * *.' " It was said by Judge Alvey in *Maenner v. Carroll,* 46 Md. 193, at page 216: "If a landlord demise premises which are not in themselves a nuisance, but may or may not become such, according to the manner in which they are used by the tenant, the landlord will not be liable for a nuisance created on the premises by the tenant. He is not responsible for enabling the tenant to commit a nuisance, if the latter should think proper to do so. *Owings v. Jones,* 9 Md. 108; *Rich v. Basterfield,* 4 C. B. 805." *Metropolitan Savings Bank v. Manion,* 87 Md. 68, 83, 39 A. 90. It was said in *Delaney v. Realty Holding Corp.,* 280 N. Y. 461, 21 N. E. 2d 507: "If no license has been issued, then an obstruction in the public way is an absolute nuisance (*McFarlane v. City of Niagara Falls,* 247 N. Y. 340, 343, 160 N. E. 391, 57 A. L. R. 1; *Clifford v. Dam,* 81 N. Y. 52; *Congrove v. Smith,* 18 N. Y. 79), whereas if a permit has been issued but the privilege to obstruct the public way is exercised in an improper manner, then

the resulting nuisance is of a kind which arises out of negligence." The case of *Clerken v. Cohen,* 315 Ill. App. 222, 42 N. E. 2d 846, involved an action against a landlord for injuries to a tenant's guest as a result of tripping and falling on icy front porch steps of leased cottage. It was said in that case: "Whatever the definition of 'nuisance', either public or private, may be, we hold the term is not applicable to the facts of the instant case. No ordinance or statute made it the duty of defendant to put gutters on the roof of the porch, or to put a roof over it at all. The lack of gutters could not reasonably be expected to cause damage beyond the limits of the premises. In no sense of the word could this defect amount to what is ordinarily spoken of as a 'common nuisance'." Nuisance ordinarily is not a separate tort in itself but a type of damage. It is said in *Prosser on Torts,* page 557: "Nuisance, in short, is not a separate tort in itself, subject to rules of its own. Nuisances are types of damage—the invasion of two quite unrelated kinds of interests, by conduct which is tortious because it falls into the usual categories of tort liability." *Rose v. Standard Oil Co. of N. Y.,* (1936), Rhode Island, 185 A. 251. We have found no Maryland case in which recovery has been allowed by a tenant against a landlord on the theory of nuisance in an allegation of injury like that in the fourth counts of the declarations and we see no reason to extend the definition of nuisance. In cases like the instant ones the plaintiff must recover, if at all, on the theory of negligence.

Although we hold that the demurrers here were properly sustained, on account of the seriousness of these cases, we are of opinion that the appellants should be permitted to further amend their declarations as suggested in this opinion. Code, 1951, Article 5, Section 24(1) provides: "In all cases where judgments shall be reversed or affirmed by the court of appeals, and it shall appear to the court that a new trial ought to be had, such new trial shall be awarded and a certified copy of

the opinion and judgment of the court of appeals shall be transmitted forthwith to the court from which the appeal was taken, to the end that said cause may be again tried as if it had never been tried; and no writ of *procedendo,* with transcript of record, shall be transmitted, as heretofore practised." It was further said in *State, Use of Dodson v. Baltimore & Lehigh R. R. Co.,* 77 Md. 489, 26 A. 865, *supra:* "We think it just, under the circumstances, to remand the case, in order that the declaration may be amended, and the case be brought to trial on its merits, although we shall affirm the judgment. Code, Article 5, Section 20 [now Code, 1951, Art. 5, Sec. 24(1), *supra*]; *Kennerly v. Wilson,* 2 Md. 245; *Earnshaw v. Aid Soc.,* 68 Md. 477." It was also said in *Tong v. Feldman,* 152 Md. 398, 136 A. 822, at pages 406 and 407: "But the joinder of Murray Feldman as a defendant when he had, so far as appears from the allegations, nothing to do with the action complained of in the first count, does constitute a defect, for if a declaration contains several counts, joint participation of all the defendants sued must be averred in each one of them. 1 *Poe, Pl. & Pr.,* sec. 527. And for that defect alone we find that the demurrer to the declaration should have been sustained, and the judgment must be affirmed accordingly. As, however, it appears to us that the plaintiff could correct this misjoinder by amendment and state a sufficient cause of action, we conclude that the judgment should, to the end that an amendment may be made, be affirmed, and remanded for a new trial under article 5, section 24 of the Code. [Now Code, 1951, Article 5, Section 24(1), *supra.*] *State, Use of Dodson v. Balto. and Lehigh R. Co.,* 77 Md. 489; *Milske v. Steiner Mantel Co.,* 103 Md. 235, 252." *Rieger & Co. v. Knight,* 128 Md. 189, 97 A. 358. We will, therefore, affirm the judgments but remand the cases for new trials.

> *Judgments affirmed and cases remanded for new trials, costs to be paid by the appellants.*