694 A.2d 131

**AMBERWOOD ASSOCIATES LIMITED PARTNERSHIP, INC., et al.**

v.

**Shanita L. MATTHEWS, Individually, etc.**

**No. 649 Sept. Term, 1996.**

Court of Special Appeals of Maryland.

May 28, 1997.

**512**

E. Dale Adkins, III (Gregory L. VanGeison and Anderson, Coe & King, L.L.P., on the brief), Baltimore, for Appellants.

Andrew D. Freeman (C. Christopher Brown, Lauren E. Willis and Brown, Goldstein & Levy, L.L.P., on the brief), Baltimore, for Appellees.

Argued before HARRELL and SONNER, JJ., and PAUL E. ALPERT, J. (Retired, Specially Assigned).

SONNER, Judge.

Shanita Matthews [1], appellee, while visiting her friend, Shelly Morton, in an apartment complex, witnessed her sixteen-month-old son, Tevin Williams, being killed by a vicious pitbull named Rampage. Rampage was known by Ms. Morton, the dog's custodian, for being vicious, but Ms. Matthews did not sue Ms. Morton, nor the owner of Rampage, who was away in jail. Instead, she sued appellants, the landlord of the apartment complex, Amberwood Associates, and the property's manager, Monocle Management (hereinafter landlords). She obtained a judgment against them on several counts which, after reduction by the court, amounted to $5,934,992.50.

---

1. Shanita Matthews sued individually and as surviving parent and representative of Tevin's estate.

We are called upon in this appeal to decide whether a landlord can be liable in tort for the damages recovered by appellees, social invitees of a tenant, on the theory that the clause in a lease prohibiting pets created a duty of due care to a social invitee on the part of the landlord. We hold that the "no pets" clause in the lease does not create such a duty and, as a consequence, we reverse.

Appellee Shanita Matthews filed a complaint in the Circuit Court for Baltimore City on September 29, 1994, and filed an amended complaint on September 18, 1995 adding Andre T. Williams, Tevin's father, as a wrongful death complainant. The complaint contained four counts. In Count I of the Amended Complaint, Ms. Matthews and Mr. Williams sued for wrongful death; in Count II of the Amended Complaint, the Estate of Tevin Williams pursued a survival action; in Count III of the Amended Complaint, Ms. Matthews pursued a negligence claim; and in Count IV of the Amended Complaint, Ms. Matthews pursued an intentional infliction of emotional distress claim.

On November 9, 1995, the jury found the landlords liable, and on November 13, it awarded damages in favor of appellees in the following amounts: Shanita L. Matthews, for the wrongful death of her son, $5,018,750.00; Andre Williams, for the wrongful death of his son, $562,100.00; the Estate of Tevin Williams, on the survival action, $604,142.54; and Shanita L. Matthews, on her count of intentional infliction of emotional distress, $1,000,100.00. Count III, the negligence claim by Ms. Matthews, was dismissed because the court found the claim to be, in effect, a claim for negligent infliction of emotional distress.

The defendants filed post-judgment motions pursuant to Md. Rules 2–532, Motion for Judgment Notwithstanding the Verdict, and 2–533, Motion for a New Trial. The plaintiffs filed a motion to amend their complaint to cause it to conform to the verdict, since the jury had awarded more than they requested in the *ad damnum* clause. The trial court granted the defendants' Motion for Judgment Notwithstanding the

Verdict on the intentional infliction of emotional distress count. The court applied Maryland's cap on non-economic damages to the award provided to the Estate of Tevin Williams, reducing that award to $354,142.54. The court permitted the amendment of plaintiffs' complaint post-trial to conform the *ad damnum* clause to the final verdicts.

The landlords filed a notice of appeal. Ms. Matthews filed a notice of cross-appeal on the dismissal of Count III of the amended complaint and on the court's having granted defendants' motion for judgment notwithstanding the verdict on the intentional infliction of emotional distress count.

The issues on appeal are:

I. Did the trial court err in ruling that a landlord can be held liable for injuries inflicted on his tenant's social guests by the tenant's dog, when the injuries did not occur in a common area?

II. Did the trial court err in refusing to permit the jury to consider a potential intervening, superseding cause of the injuries in this case?

III. Did the trial court err in submitting the issue of intentional infliction of emotional distress to the jury?

IV. Did the trial court abuse its discretion in refusing to permit defendants to raise the defense of contributory negligence?

V. Did the trial court err in permitting the plaintiffs to name three new fact witnesses on the issue of notice to the landlord on the eve of trial?

We hold that the trial court erred as to the landlord's liability and, therefore, reverse.

### Facts

On a weekly basis, Ms. Matthews typically visited her friend, Ms. Morton, who was keeping Rampage for her incarcerated boyfriend. Four months prior to the attack, Ms. Morton moved to Amberwood Apartments from another apartment complex, bringing Rampage with her. Ms. Mat-

thews and Tevin had also regularly visited Ms. Morton at her previous address. Due to Rampage's history of fighting with other animals, Ms. Morton usually kept him chained and muzzled; he was not chained or muzzled, however, on the day of the attack.

On February 9, 1994, Ms. Matthews and Tevin visited Ms. Morton in her apartment located at 6012 Amberwood Road in Baltimore City. Ms. Morton had left the apartment momentarily to answer a call on her pager, leaving Ms. Matthews, Ms. Morton's six-year-old son Darnell, and Tevin in the apartment with Rampage. While Ms. Matthews was sitting at the kitchen table, the two boys began playing in the adjacent living room. Moments later, Darnell yelled, "Rampage got Tevin." Ms. Matthews looked up and saw the dog shaking Tevin by his neck, ran over to the dog, attempted to pry the dog off the child, and then ran outside to seek help from Ms. Morton. The two women returned to the apartment, and Ms. Matthews again attempted to pull the dog off the boy, while Ms. Morton stabbed the dog with a kitchen knife. Eventually, the dog loosened its jaws, freeing Tevin. Tevin was transported by ambulance to the hospital, where he died 1¼ hours later.

The lease between the landlord and Ms. Morton contained a "no pets" clause. At trial, four of the landlord's former employees testified that they alerted management as to the presence of a dog in Ms. Morton's apartment. During the period that Rampage lived in Ms. Morton's apartment, the four maintenance men allegedly came into contact with Rampage when they entered the apartment to make repairs on various occasions. One of the four men, Philip Monroe, testified that he told management that a dangerous pitbull lived in the apartment, that he saw the pitbull chasing a man, and that the dog, while chained up outside, growled and barked at children. Mr. Monroe could not remember the exact date or dates that he informed management about these incidents. The other witnesses did not tell management that the dog was dangerous, only that a dog was in the apartment.

**516**

*Analysis*

**I.**

To establish a cause of action for negligence, the plaintiff must prove the following elements: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Richwind v. Brunson*, 335 Md. 661, 670, 645 A.2d 1147 (1994) (citations omitted). "[T]he essential question [regarding duty is] whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Jacques v. First National Bank*, 307 Md. 527, 532, 515 A.2d 756 (1986). In determining whether to assign tort duty to a party, the court considers the relationship that exists between the parties and the nature of the harm likely to result from a failure to exercise due care. *Id.* at 534, 515 A.2d 756.

In this case, the appellees proceeded on a theory that the lease between the landlord and Ms. Morton, which contained a "no pets" clause, imposed a duty on the landlord and the management company to remove Rampage from the premises before the attack occurred. They claimed that the landlord had knowledge of the dog's "vicious propensities" and that that knowledge, combined with the "no pets" clause, required the landlord to take action to protect the social guest of a tenant who is in violation of the lease. The trial court, in adopting this view, held that the appellants owed a duty to the appellees. We disagree.

This issue is one of first impression in Maryland. Courts that have already confronted the issue are divided as to whether a landlord's retention of control of the premises, via a clause in the lease, imposes a duty on the landlord. *See* Ramona C. Rains, Comment, *Clemmons v. Fidler: Is Man's Best Friend a Landlord's Worst Enemy*, 19 AM. J. OF TRIAL ADV. 197, 208 (1995); *See generally* Annot., 87 A.L.R.4th 1004 (1991) (listing cases from jurisdictions that have considered landlord liability for injury to a third person resulting from an

attack by a tenant's animal). Moreover, Maryland does not have a statute regarding liability for damage caused by dogs. We must, therefore, turn to the rationales in analogous cases from other jurisdictions and apply them to our own jurisprudence.

In *Uccello v. Laudenslayer,* 44 Cal.App.3d 504, 118 Cal. Rptr. 741 (1975), a California court held that a duty of care arises when the landlord has actual knowledge of the presence of a dangerous animal, and when he has the right to remove the animal by retaking possession of the premises. In *Uccello,* the landlord permitted a tenant, who leased month-to-month, to harbor a German shepherd dog. Even after learning that the dog had bitten several other people, the landlord continued to renew the lease, and continued to allow the dog to remain on the premises.

The court acknowledged that, historically, landlords have not been liable for injuries to their tenants' invitees which arise from dangerous conditions that come into existence after the tenant has taken possession. *Id.* 118 Cal.Rptr. at 745. Basing its decision on an "enlightened public policy," however, the California court stated that landlords should not be permitted "to sit idly by in the face of the known danger to others." *Id.* 118 Cal.Rptr. at 746. The court reasoned that a pet owner is often incapable of objectively evaluating its dog's dangerous behavior; therefore, the landlord, under certain circumstances, should bear the responsibility to prevent future harm. *Id.* 118 Cal.Rptr. at 744. The California court, quoting *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 22, 551 P.2d 334, 342 (1976), applied the following criteria in determining tort duty:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting

liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*Id.* 118 Cal.Rptr. at 747. The Maryland Court of Appeals also quoted this language to determine tort duty in a construction case, *Village of Cross Keys v. U.S. Gypsum*, 315 Md. 741, 752, 556 A.2d 1126 (1989) (quoting *Tarasoff v. Regents of University of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 342 (1976)).

In *Gallick v. Barto*, 828 F.Supp. 1168, 1174–75 (M.D.Pa. 1993), the court held that a landlord was liable to her tenant's guest for injuries resulting from an attack by the tenant's ferret. The court based its holding on evidence that the landlord knew of the ferret's presence, that the landlord knew the ferret was "wild," and that the landlord had the power to evict the tenant via a "no pets" clause.

Other courts have come to contrary results. The Supreme Court of Washington has held that a landlord was not liable for a tiger attack which occurred on the tenant's property. *Frobig v. Gordon*, 124 Wash.2d 732, 881 P.2d 226 (1994) (1994). In *Frobig*, the landlord had notice that the tenant was harboring a tiger on the premises, in violation of oral terms between the parties regarding the keeping of wild animals on the property. The tenant unleashed the tiger during a commercial shoot on the property and, as a result, the tiger attacked and seriously injured a woman assisting in the filming. The court, applying common law landlord-tenant concepts stated:

> The rule in Washington is that the owner, keeper, or harborer of a vicious animal is liable; the landlord of the owner, keeper, or harborer is not ... With regard to conditions on the land that develop or are created after the property has been leased, the general rule is that a landlord is not responsible, either to persons injured on or off the land, for conditions which develop or are created by the tenant after possession has been transferred....

*Id.* 881 P.2d at 228. The court did not make an exception to this rule, even in cases in which the landlord knew that his tenant harbored a dangerous animal on the premises and

when the landlord retained control over the animal's presence. Citing the dissent in *Strunk v. Zoltanski*, 62 N.Y.2d 572, 479 N.Y.S.2d 175, 468 N.E.2d 13 (1984), which preceded *Uccello*, the *Frobig* court stated that the landlord should not bear liability "when the tenant, who has the opportunity to protect others from the dangerous condition, fails to do so." *Frobig*, 881 P.2d at 229.

The Nevada Supreme Court, in *Wright v. Schum*, 105 Nev. 611, 781 P.2d 1142 (1989), which also held that landlords are not liable for injury to third persons caused by their tenants' pets, observed another public policy concern. It stated:

> [H]olding landlords liable for the actions of their tenants' vicious dogs by requiring them to evict tenants with dangerous dogs would merely result in the tenants' moving off to another location with their still dangerous animals.

*Id.* 781 P.2d at 1143. The trial court in *Wright* aptly described this effect as a "Typhoid Mary" phenomenon, shifting rather than solving the problem. *Id.*

The Wisconsin Supreme Court, in *Gonzales v. Wilkinson*, 68 Wis.2d 154, 227 N.W.2d 907, 910 (1975), reasoned that landlords should not be "insurers" for the acts of a tenant. Similarly, *Clemmons v. Fidler*, 58 Wash.App. 32, 791 P.2d 257, 260 (1990), reasoned that imposing liability for the dog's acts on the owner "plac[es] responsibility where it belongs, rather than fostering a search for a defendant whose affluence is more apparent than his culpability."

In Maryland, the settled law is that when the owner has parted control of the premises, the tenant has the burden of keeping the premises properly, in the *absence of an agreement to the contrary*. *Marshall v. Price*, 162 Md. 687, 689, 161 A. 172 (1932) (emphasis supplied). The landlord is not responsible for any nuisance created by the tenants. *Id.* In *Marshall v. Price*, the tenant had dug a pit on land that was leased to him. A guest visiting the tenant fell into the pit, injured herself, and sued the landlord. The Court stated "[i]t does not follow that because the defendants are the owners of

the lot that they are liable for all the nuisances that may be created thereon, no matter by whom." *Id.* at 689, 161 A. 172.

In *State v. Feldstein,* 207 Md. 20, 34, 113 A.2d 100 (1955), the Court held that the landlord was not liable for the death of his tenant's family by asphyxiation due to the tenant's faulty installation of a gas heater. It held:

> If a landlord demise premises which are not in themselves a nuisance, but may or may not become such, according to the manner in which they are used by the tenant, the landlord will not be liable for a nuisance created on the premises by the tenant. He is not responsible for enabling the tenant to commit a nuisance, if the latter should think it proper to do so.

*Id.*

In this case, Rampage the pitbull was, indeed, a "nuisance" brought to the premises by the tenant. Appellees argue that the lease term stating "no pets" is the "agreement to the contrary" for which *Marshall* makes an exception. They do not, however, give the Court any evidence to suggest that the "no pets" clause was meant to benefit anyone but the landlord.

The facts in this case contrast with the facts in *Alaskan Village, Inc. v. Smalley,* 720 P.2d 945 (Alaska 1986), in which the court found that the "no *vicious* dogs" clause in a lease existed to benefit not only the landlord, but the safety of other residents in a trailer park. In fact, the manager of the trailer park admitted that the trailer park enacted the rule to protect other tenants. The court held that the landlord had a duty of care arising from actual knowledge of prior incidents of viciousness exhibited by the offending pitbull, and that the park behaved negligently by failing to enforce its own rules. *Id.* at 946.

 Unlike clauses that specifically prohibit "vicious dogs," the clause in this agreement prohibited pets in general, i.e., parakeets, cats, mice, etc. Clearly, the Amberwood clause did not contemplate the harm that an animal might do to people, only the harm it may do to the premises.

■ The landlords were not in breach of the "no pets" provision; the tenant was in breach. Clauses in lease contracts creating a duty on the part of tenant to the landlord, unless specifically designed to do so, do not create obligations on the part of landlords to third parties. Contract law provides that the beneficiary of a clause has no obligation to enforce the contract provision, but could waive the provision by his conduct. *John B. Robeson Associates, Inc. v. Gardens of Faith, Inc.*, 226 Md. 215, 172 A.2d 529 (1961). In this case, the landlords, who were the beneficiaries of the "no pets" clause, had no duty to third parties to enforce the rule.

Unlike the Washington court in *Frobig*, which disagreed with the so-called "enlightened public policy" approach that the California court in *Uccello* implemented, Maryland courts hold that public policy has a place in the balance. In *Jacques v. First National Bank*, 307 Md. 527, 532–33, 515 A.2d 756 (1986), the Court stated:

> It is . . . not surprising to find that the problem of duty is as broad as the whole law of negligence, and that no universal test for it ever has been formulated . . . But it should be recognized that "duty" is . . . *an expression of the sum total of those considerations of policy* which lead the law to say that the plaintiff is entitled to protection. (Footnotes omitted; emphasis supplied).

The criteria that the Maryland Court of Appeals adopted in *Village of Cross Keys* also provides for the weighing of both public policy and morality.

In our analysis, we must be aware that moral duty does not always correspond to a tort duty. *Id.* at 532, 515 A.2d 756 (citing *Prosser and Keeton on The Law of Torts*, Sec. 53, at 357 (1984)). We acknowledge that a mother's loss of her infant son in such a violent manner, as she stood by unable to stop the horrifying incident, is an actionable event and it is certainly justifiable that she be awarded damages, even though no amount of money will ever erase the pain of this tragedy. The difficulty that this Court must face, however, is to determine if the landlord is liable. Liability must be

apportioned only to parties who are at fault, not to those who are merely joined to the matter because of their affluence.

When applying the totality of circumstances test, we come to a different result than did the *Uccello* court. We find that the existence of the "no pets" clause in the lease did not mandate that the landlord remove the dog to prevent potential danger to visitors of the tenant who owned the dog. For this Court to hold otherwise would be to chill a myriad of contract clauses that protect landlords and their property. Moreover, we will not impose on the landlord a greater responsibility to police its residents than the City has.[2] We agree with the Nevada court in *Schum* that liability needs to remain on the persons who can most control the harm, the tenants, particularly when the plaintiffs are not social invitees of other tenants, but of the offending tenant who controls the vicious dog.

## II.

■ We also find that, even if appellants had a duty to enforce the "no pets" policy, their failure to do so did not proximately cause Tevin's death. Negligence is not actionable unless it causes the harm complained of *without* the intervention of any independent factor. *Suburban Trust Co. v. Waller,* 44 Md.App. 335, 347, 408 A.2d 758 (1979). An intervening cause, in order to be a superseding cause, must alone produce the injury, without the defendant's negligence contributing in the slightest degree. *Id.*

■ The trial court erred in refusing to permit the jury to consider potential intervening, superseding causes of Tevin's death. The trial judge stated:

---

**2.** Balto. City Code, Art. 11, Sec. 30(d) requires a muzzle and leash on pitbulls, but it does not prohibit the keeping of pitbulls altogether. Three of the maintenance men who testified stated that they reported the presence of a dog, but did not report that the dog was either a pitbull or that it was unchained and unmuzzled. Only one maintenance man testified that he told the manager that the dog was a pitbull and that it had broken its leash to chase someone. Appellee Ms. Matthews testified that, other than on the day of Tevin's death, Rampage was always muzzled.

[I]t would be irrelevant to your deliberations regarding the liability of Amberwood Associates, the defendants in this case, if Shelly Morton, Donte [sic] Chavez [the dog's owner], Shanita Matthews or Tevin Williams were also responsible for Tevin Williams' death.

This Court has held that, ordinarily, the question of whether causation is proximate or superseding is a matter to be resolved by the jury. Only where the evidence can lead to no other conclusion, can the matter be decided as a matter of law. *Id.*

In this case, reasonable minds could have differed as to whether the behavior of others was a proximate or superseding cause of Tevin's death. Evidence showed that Ms. Matthews and Ms. Morton knew that Rampage had attempted to attack animals while on its leash, and that it had been injured in several fights with other animals. Ms. Matthews knew that Rampage was usually chained and muzzled while in the apartment. On the day of Tevin's death, Ms. Matthews knew that Rampage was neither chained nor muzzled, yet she did not keep her son away from the dog. Moreover, the jury could have found that Ms. Morton was negligent by not muzzling the dog on that particular day. The trial judge deprived the jury of the opportunity to consider whether Ms. Morton's or Ms. Matthews's negligence proximately caused the injuries.

As we have resolved liability in issues I and II in favor of the landlords, we do not consider the remaining issues.

**JUDGMENT REVERSED. COSTS TO BE PAID BY APPELLEES.**